[City of Ensley, et al. v. Simpson.]

# City of Ensley, *et al. v.* Simpson.

### *Bill to Enjoin the Putting in Operation of the Greater Birmingham Act.*

(Decided Dec. 16, 1909.   Rehearing denied Feb. 26, 1910.
52 South. 61.)

1. *Constitutional Law; Statutes; Validity.*—While every possible intendment must be indulged in favor of the constitutionality of the statutes, the plain provisions of the Constitution must be enforced; but before a statute will be declared unconstitutional, it must clearly and unavoidably appear to have been without the power of the Legislature to enact.

2. *Same; Judicial Question.*—The propriety and wisdom of a statute is not a judicial question but one exclusively for the legislature.

3. *Same; Due Process of Law; Municipal Corporation.*—Municipal corporations are merely subdivisions of the state created as convenient agencies for exercising such governmental power as may be entrusted to them, which powers the state may at its pleasure, modify or withdraw, and hence, a statute operating to destroy an incorporated city is not invalid as depriving it of its property without due process of law in violation of the 14th amendment to the Constitution of the United States.

4. *Same; Obligation of Contracts; Municipal Corporation.*—The enforcements of obligations assumed by a municipal corporation in existence at the time the obligations were made cannot be impaired by the legislature, and when they are changed a substantial equivalent must be provided.

5. *Statutes; Special Statutes; Validity.*—Section 104, Constitution 1901, does not prohibit the legislature from altering the boundaries of a city so as to include within its territory, territory included within existing cities.

6. *Same.*—Acts of Aug. 20, 1909, (Local Laws S. S. 1907, p. 392) affects noncontiguous municipalities and is not in conflict with section 105, Constitution 1901, since the general municipal law (Acts 1907, p. 604) merely permits the alteration of municipal boundaries by the acquisition of contiguous territory.

7. *Same; Amendment.*—Section 104, Constitution 1901, does not prohibit a special act the effect of which is to destroy a municipality, since to destroy is not to amend as a statute amended survives.

8. *Same; Private Corporation.*—Section 229, Constitution 1901, applies only to private business corporations and not to municipalities.

9. *Same; Local Laws; Passage.*—An affidavit of the publisher of a newspaper that a subjoined notice of intention to apply for the passage of a local law was published once a week for four consecutive weeks, is a sufficient proof of notice of publication or of publication

[City of Ensley, et al. v. Simpson.]

of notice required by section 106, Constitution 1901, so as to authorize the legislature to find that notice of intention had been published.

10. *Same; Publication; Sufficiency.*—Where the Governor convened the legislature in special session on July 27, 1909, by proclamation issued a few weeks before hand, and the affidavit of the publisher was made on July 28, 1909, showing publication of notice of intention to apply to the legislature at such special session for the passage of a local law, and that such publication had been made four consecutive weeks prior thereto, the publication of the notice was had at a time not unreasonably remote from the introduction of a bill on July 29, 1909.

11. *Same; Approval by Government.*—Under sections 56 and 125, a joint resolution requesting the governor to return a bill which had passed both houses of the legislature for the purpose of correcting errors therein need not be submitted to the governor for his approval, and where the journals of both houses showed that the bill on its return was again without amendment enrolled and again signed by the speaker of the house and president of the senate, and again presented to the governor who approved it, the bill was legally enacted; the joint resolutions referred to in the Constitution being limited to resolutions applying to a form of legislation of a local or temporary character and known in legislative assemblies as joint resolutions, etc.

12. *States; Legislature; Journals; Protest.*—A protest spread upon the journals of the legislature by a member thereof against the passage of a bill is the exercise of a personal privilege conferred by section 55, Constitution 1901, and does not affect or destroy the effect of the legislative journals.

13. *Municipal Corporations; Legislative Control.*—The power to alter municipal charters or to repeal them exists in the state without limitation since such charters are conferred for political purposes.

14 *Same; Consolidation; Pre-existing Obligation; Enforcement.*— If it be conceded that the merger of a city, which had issued bonds under agreement to levy a tax to provide a sinking fund for the payment of the interest on the bond, into another city, destroyed the security of the bond, on the ground that the general credit of the larger city was not a substantial equivalent for the security contracted for, yet, the legal obligation remained unimpaired and a remedy for the diversion of funds impairing the security can be had upon proper application.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by J. B. Simpson against the city of Ensley and others, to enjoin the municipal officers from turning over the books, papers, etc., of the municipality to the city of greater Birmingham, and to declare the acts consolidating the two cities, void. From a decree for complainants respondents appeal. Reversed and rendered.

[City of Ensley, et al. v. Simpson.]

CABANISS. & BOWIE, ROMAINE BOYD, and JERE C KING, and F. G. MOORE, for appellant. The bill being to extend the limits to non contiguous territory, and alter the boundary of the city by taking in other cities did not require notice of intention to introduce.—Secs. 104 and 106, Constitution 1901. Notice was given, however, and sufficient proof made thereof.—*Childers v. Shepherd*, 142 Ala. 285; *Ex parte Black*, 144 Ala. 1. The affidavit of the publisher is sufficient. The bill was not violative of section 105 of the Constitution.—*McGregor v. Bayles*, 19 Ia. 43. Section 229, Constitution 1901, relates strictly to private corporations, and not to municipal corporations.—*Hunter v. Pittsburgh*, 207 U. S. 161; *Mobile v. Watson*, 116 U. S. 289; *Amy v. Selma*, 77 Ala. 703. The act destroyed the charter and did not amend or revise it.—*Statet, ex rel. Skeggs v. Green*, 46 South. 268; *State, ex rel Hanna v. Tunstall*, 40 South. 135. A statute will not be declared unconstitutional unless no doubt exists on the question.—*Mobile D. Docks v. Mobile*, 40 South. 205; *State, ex rel. Covington v. Thompson*, 38 South. 579. A municipal charter is not a contract, and hence, may be repealed, altered or amended at will.—1 Abbott Municipal Corporation, pp. 38-9-40. The bill is not offensive to the provisions of section 107 of the Constitution. The bill is not violative of the 14th amendment of the United States Constitution.—*Hunter v. Pittsburgh, supra.* Counsel discuss other questions, but without citation of authority.

F. E. BLACKBURN, and JOHN C. FORNEY, for appellant. The act is in violation of section 105, of the Constitution, for the reason that there is a general act providing for the enlargement of the boundaries of cities, or the consolidation of cities.—*City Council of Montgomery v. Reese*, 149 Ala. 188; *Town of McGregor v.*

[City of Ensley, et al. v. Simpson.]

*Baylies,* 19 Ia. 43; *In re City of Denver,* 32 Pac. 615. The act was not published in the manner and for the length of time required by section 106. Evidence de hors the record cannot be introduced either to sustain or defeat a statute, and the journals do not show a sufficient compliance as to proof of publication of notice.— *State ex rel. Frederick v. Brodie,* 148 Ala. 318; *Mayor of Ensley v. Cohen,* 149 Ala. 320. The act necessarily repeals the charter of the city of Ensley, and of the several other municipalities.—*In re City of Denver, supra; Ex parte Prince,* 9 Ia. 30. Section 329 of the Constitution contemplated that the legislature should enact general laws by which charters of municipalities or other corporations could be amended or repealed.—*Ex rel. Atty. Gen. v. Cincinnati,* 20 Oh. St. 18; *Strange v. City of Dubuque,* 62 Ia. 305. The act is violative of section 107 of the Constitution, and of 195. Two municipalities cannot exist in the same territory at the same time.—*Butler v. Walker,* 98 Ala. 358. The act is not passed in accordance with the requirements of sections 66 and 125 of the Constitution.—*Montgomery B. B. Wks. v. Gaston,* 126 Ala. 425; *Sjoberg v. Security Sav. Assn.,* 72 Am. St. Rep. 616; *Devlin v. Hall,* 33 N. Y. 77; *Robinson v. The State,* 130 Ala. 494. The act impairs the obligation of the contract, by which bonds of the city of Ensley were issued.—*U. S. Ex rel Von Hoffman v. Simpson,* 4 Wall. 535; *Mobile v. U. S. ex rel.,* 116 U. S. 289.

SAYRE, J.—This case questions the constitutional validity of the act approved August 20, 1909 (Loc. Laws Sp. Sess. 1909, p. 392), entitled "An act to alter or rearrange the boundary lines of the city of Birmingham, Alabama, so as to include within the corporate limits of said city the territory now included within

the cities or towns of Avondale, Woodlawn, East Lake, North Birmingham, North Haven, Graymont, Elyton, West End, Pratt City, Wylam, and Ensley, and other territory, and so as to exclude from the city of Birmingham certain territory now included within the corporate lmits of said city of Birmingham." The chancellor decreed the invalidity of the act, and this appeal brings that decree under review.

While every possible intendment must be indulged in favor of the constitutionality of the enactment, plain mandates of the Constitution must be recognized and enforced. For one thing, it is urged that the act in question is violative of that part of section 105 of the Constitution which provides that "no special, private or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law." The city of Avondale and the territory embraced within the corporate limits of that city had been annexed to and merged into the city of Birmingham in accordance with the general law prior to the passage of the act. The territory of that corporation, as it had been, was contiguous to the city of Birmingham. The city of Ensley and each of the municipalities named in the act and included within the limits of the enlarged city of Birmingham, as well as the last-named city, were at the date of the passage and approval of the act municipalities existing under the general law of the state. Some of them covered territory contiguous to the city of Birmingham; others did not. These municipalities and much intervening unincorporated territory were merged into the enlarged city of Birmingham. Sections 20 to 22 of the act approved August 13, 1907 (Acts 1907, p. 790), commonly known as the "Municipal Code law," provide for the consolidation of two or more municipalities lying con-

tiguous to each other. Section 23 of the Municipal
Code law provides a means for the extension of corporate
ate limits to include new territory. The territory so
included must be contiguous to the boundary of the
city at some point, but may not embrace any territory
within the corporate limits of another municipality. An
act approved August 13, 1907 (Acts 1907, p. 604), contained
tained provisions similar to those of section 23 of the
Municipal Code law. An act of August 15, 1907 (Acts.
1907, p. 598), also provided for the annexation and
merger of any city or town into a contiguous city or
town. Section 104 of the Constitution denies to the
Legislature the right to pass any special, private, or
local law amending, confirming, or extending the charter
ter of any private or municipal corporation; but in
subdivision 18 of that section it was provided that this
should not prohibit the Legislature from altering or
rearranging the boundaries of a city, town, or village.
It is clear enough that nothing contained in section
104 denies to the Legislature the power to pass the act
in question. Nor can section 105 be so interpreted.
Its language has been quoted. If it should be conceded,
contrary to our present impression, that the power of
legislation by special or local laws in respect to the
alteration or rearrangement of municipal boundaries is
excepted and reserved by the proviso of subsection 18
of section 104 only in the event there is no general law
on the subject, that concession would not determine this
case, for here the Legislature has embodied in one comprehensive
prehensive scheme the inclusion, not only of contiguous.
territory and municipalities not contiguous at the time
of the passage of the act. True, under the general law,
the same result might have been obtained by a tedious
and embarrassing process of repeated additions to the
territory of the absorbing city, each in turn, and so ulti-

mately the scheme as an entirety, being dependent upon the vote of the electors resident in the municipality or unincorporated territory annexed from time to time. But the Legislature had the right to weigh the advantages of the scheme as a whole and enact law accordingly to accomplish the desired end at one stroke. Under no general law could the same considerations be submitted to the same electorate or the same result reached in the same way.

We do not deem it necessary to enter upon a detailed statement of distinctions which may be taken between the case at bar and the cases of *Town of McGregor v. Baylies,* 19 Iowa, 43 and *In re Extension of Boundaries of City of Denver,* 18 Colo. 288, 32 Pac. 615. In Colorado judges of the highest court are required to give opinions on request of the executive or the Legislature. But the judicial quality of such opinions has been questioned. In Rhode Island there is a similar requirement. Said Ames, C. J., in *Taylor v. Place,* 4 R. I. 324-362: "The advice, or opinion, given by the judges of this court, when requested, to the Governor or to either house of the General Assembly, under the third section of the tenth article of the Constitution, is not a decision of this court; and given, as it must be, without the aid which the court derives in adversary cases from able and experienced counsel, though it may afford much light from the reasonings or research displayed in it, can have no weight as a precedent." Neither of the cited cases involved constitutional provisions similar to those of this state to which reference has been made.. The Constitution of Iowa contained a provision that, "in all cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state." It also prohibited the incorporation of cities and towns by special or local laws (held

to prohibit the passing of any act to amend a municipal charter) without exception in favor of acts altering or rearranging boundaries. So much of the Constitution of Iowa as we have quoted is in effect the same as section 24 of article 4 of the Alabama Constitution of 1875 under which it was frequently held in this state that the courts would not review the legislative judgment that a matter of legislation could not be provided for by general law. The departure worked by section 105 of the Constitution of 1901 has significance. The inhibition now is against special, private, or local laws in any case which is provided for by a general law, of which the courts shall judge. Formerly the inquiry was whether the Legislature could provide for a particular case by general law. Now the question is whether it has so provided. We need not be understood as impairing the authority of *City Council of Montgomery v. Reese*, 149 Ala. 188, 43 South. 116. The court there said that it could not perceive that the framers of the Constitution intended the prohibition to operate only against special, local, or private laws which are in ipsis verbis of the general law. The effect of the ruling was that the enactment of a general law authorizing municipal corporations to issue bonds to run not exceeding 30 years, while permitted to stand upon the statute books, operated as a constitutional inhibition against any act permitting any particular municipality to issue bonds to run not exceeding 30 years. Appellee's argument applies that decision to the case in hand as follows: The general statute permitting the alteration of rearrangement of municipal boundaries by the acquisition of contiguous territory only, while it stands, must operate as a constitutional inhibition against any act consolidating noncontiguous municipalities, if at the same time, and in order to pre-

serve the unity and contiguity of the consolidated municipality, as perhaps is necessary to the validity of the act (*City of Denver v. Coulehan*, 20 Colo. 471, 39 Pac. 425, 27 L. R. A. 751), intervening territory, contiguous to both of the constituent municipalities, is included in the act of consolidation. The subject of legislation in the general law is the alteration or rearrangement of boundaries as affecting contiguous municipalities and unincorporated territory. The subject-matter dealt with in the special act is the alteration or rearrangement of boundaries as affecting noncontiguous municipalities as well. Considered in their totality the two acts are not identical as to subject-matter. We therefore conclude that the special act is not obnoxious to section 105 of the Constitution.

Another insistence is that the act in question is in contravention of subdivisions 5 and 18 of section 104 of the Constitution, for that one necessary effect of the act, if valid, is to repeal the charters of those incorporated cities and towns merged by the act into the greater city of Birmingham. This court has settled the question, in accordance with obvious reason, that two municipalities cannot exist over the same territory at the same time.—*Butler v. Walker*, 98 Ala. 358, 13 South. 261, 39 Am. St. Rep. 61. Subdivision 5 prohibits the Legislature to pass any special, private, or local law "incorporating a city, town or village." It is urged on the authority of the case *In re Extension of Boundaries of Denver, supra,* that the quoted provision includes a prohibition of any special or local act the effect of which is to destroy an incorporated municipality. Considering a section of the Constitution of Colorado which reads as follows: "The General Assembly shall provide by general laws for the organization and classification of cities and towns. The number of such classes

shall not exceed four, and the powers of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers, and be subject to the same restriction"—the court, in reponse to a resolution of the House of Representatives, having reference to the constitutionality of a bill to revise and amend the charter of the city of Denver, expressed its opinion that the power of the Legislature to disincorporate cities and towns by special act must be denied, the reason given being that such an act, if "not directly inhibited by the letter of the Constitution, is certainly opposed to the spirit of the provision. The object being to free all towns and cities from local or special legislation," it was said to be "clear that the inhibition of the section must be held to extend to the disincorporation, as well as the incorporation, of such cities and towns." We cannot following the reasoning of the case. There is no literal prohibition in the Constitution of this state against the disincorporation of cities and towns by special laws. Before an act of the Legislature can be declared unconstitutional, it must clearly, decisively, and unavoidably appear to have been without the power of the Legislature. Nor can any purpose conceivably entertained by the framers of the Constitution be served by keeping in existence a municipal corporation which for any reason has outlived its usefulness or when an enlightened policy shall determine that its people and territory may find better government as a part of another municipality. The purpose was to bring about uniformity of organization and government because wisdom might better be expected in laws which must affect cities and towns having many representatives in the Legislature, and for the advantages of a uniform system of law throughout the State. Neither of these purposes is to be served

by an interpretation of the Constitution, which, traveling beyond its letter, denies the power of the Legislature to disincorporate a city, town, or village.    The other cases cited by appellee (*Davis v. Woolnough,* 9 Iowa, 104; *Ex parte Pritz,* 9 Iowa, 30; *State ex rel. Atty. Gen. v. Cincinnati,* 20 Ohio St. 18) hark back to the proposition, already discussed, that the Legislature may not amend municipal charters by special acts.    To destroy is not to amend.    A thing amended survives. Nor is an alteration or rearrangement of the boundaries an amendment of the charter of a municipality. The Constitution clearly recognizes this fact by excepting an act altering or rearranging boundaries from the prohibition against local laws amending charters.    Nor, again, does appellee's contention gain comfort in section 229 of the Constitution, which contains this provision among others:    "The charter of any corporation shall be subject to amendment, alteration, or repeal under general laws."    The context of that section makes it clear that this provision was intended for application to private business corporations.    In the printed copies of the Constitution, to be found in the Code and elsewhere, this section, along with others which seem to pertain to private corporations only, is grouped under the subhead "Municipal Corporations."    But an inspection of the official copy on file in the office of the Secretary of State makes it to appear that the sections referred to are grouped under the subhead "Private Corporations," thus relieving the situation of any doubt supposed to grow out of section 229.

We are asked to condemn this act as evincing an arbitrary exercise of legislative discretion.    Again, the case of the city of Denver is referred to.    But we have said enough of that case and of the different constitutional provisions there involved to indicate our opinion

that it ought not to control the decision of this case. It would require an extreme case to induce us to declare an exercise of legislatie discretion as to the territory to be included in a city or town to constitute an usurpation of power and an unjustifiable disregard of the rights of municipalities destroyed by merger, if, indeed, any case of that character could be made the subject of judicial review.—Tiedeman, Mun. Corp. § 56. The charter of a municipal corporation is conferred for political purposes. In *Town of East Hartford v. Hartford Bridge Co.*, 10 How. 511, 13 L. Ed. 518, it is said that cities and towns which are public municipal and political bodies "are incorporated for public, and not private, objects. They are allowed to hold privileges and property only for public purposes. The members are not shareholders, nor joint partners in any corporate estate, which they can sell or devise to others, or which can be attached and levied on for their debts. Hence generally the doings between them and the Legislature are in the nature of legislation rather than compact, and subject to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes." The power to alter, amend (subject in this state to the limitation that in certain conditions it must be done by general bill), or repeal the charter of a public corporation must necessarily exist without limitation in the sovereign, otherwise there would be "numberless petty governments existing within the state, forming a part of it, but independent of the control of the sovereign power."—1 Abbott, Mun. Corp. § 22, where numerous authorities are cited. As for the reasonableness of the exercise of power in this particular case, "this court has, as it should, borne constantly in mind * * * that the propriety and wisdom of enactments by the lawmakers

are questions peculiarly and exclusively within the decisive right of that department, and, if the act under investigation contravenes no provision of the organic law, the judiciary is without rightful power to review the legislative determination of the wisdom and propriety of the action taken."—*State ex rel. Meyer v. Greene*, 154 Ala. 249, 46 South. 268. These considerations dispose, also, of the allegations of the bill that the act runs counter to the fourteenth amendment of the Constitution of the United Sttaes, in that the city of Ensley will by this act be deprived of its property without due process of law. This question was disposed of in the case of *Hunter v. Pittsburg*, 207 U. S. 161, 28 Sup. Ct. 207, 52 L. Ed. 151, in language so apt and conclusive that we quote it as follows: "Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. For the purpose of executing these powers properly and efficiently, they are usually given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither their charters nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property or exempting them from taxation upon it, constitutes a contract with the state within the meaning of the federal Constitution. The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in their agencies, expand or contract the territorial area, unite the whole or a part of it with

another municipality, repeal the charter, and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all of these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the altered or continued existence of the corporation or its powers, and there is nothing in the federal Constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it."

In the next place, we are asked to consider whether the act be not offensive to section 106 of the Constitution. The journal of the House of Representatives shows as proof of notice an affidavit of one James J. Smith, who deposes and says that he was the publisher of the "Birmingham Ledger," a newspaper published in the city of Birmingham, Jefferson county, Ala., and that the notice, a copy of which was attached, was inserted, published, and appeared regularly in the said "Birmingham Ledger" once a week for four consecutive weeks, without cost to the state of Alabama. This was subscribed and sworn to on the 28th day of July, 1909. The attached copy of the notice was in the following words and figures: "Notice is hereby given that at the next special session of the Legislature of Alabama, which will convene in the city of Montgomery on the 27th day of July, 1909, a bill will be introduced for

passage, the substance of which will be." Here followed the bill in extenso. This bill was introduced into the house on July 29, 1909. It is contended that the journal does not show publication once a week for four consecutive weeks, but only the conclusion of affiant that such publication had been made. In support of this contention *State ex rel. Frederick v. Brodie,* 148 Ala. 381, 41 South. 180, is cited. In that case the affidavit stated that "notice stating the substance of the foregoing bill, and the intention to apply for the enactment of such into law, was duly published in the Ensley Herald, at least once a week for four consecutive weeks, prior to the day hereof." This was said to fall short of legal proof of the publication of the substance of the bill as showing nothing more than the conclusion of the witness that the notice had contained the substance of the bill. Nothing was said as to the notice being defective in other respects, though in the respect now material it was identical with the notice here in question. Such, also, was the case in *Childers v. Shepherd,* 142 Ala. 385, 39 South. 235, in which the notice was held to comply with the constitutional requirements. The argument now is that the affidavit shows nothing more than the conclusion of the witness that publication made had been begun four entire weeks before the introduction of the bill. The affidavit was accepted by the Legislature as sufficient, and some imperative reason must be made to appear why we should hold otherwise. We do not question the decision in *State ex rel. Frededick v. Brodie, supra.* In that case it was obvious that a statement that the substance of the bill had been published conveyed no intimation as to what had been published. Here, however, the statement as to the length of time during which the publication had been made followed the language of the Constitution. It

was in a sense, to be sure, the statement of a conclusion, as every statement must be. But it was not an offensive conclusion. Witnesses are permitted to state many conclusions where they may involve necessarily certain facts. Such conclusions are indulged as statements of collective facts. But witnesses are never permitted to state the contents of a paper writing, nor to state that one paper is a substantial copy of another. If publication begun at least four weeks in advance of the introduction of a bill is the only publication which complies with the language of the Constitution requiring publication for four consecutive weeks, the meaning of the language of the affidavit must be that publication was begun at least four weeks before the bill at issue was introduced. The Legislature in the discharge of its sworn duty so interpreted the affidavit, that interpretation was not strained, forced, or unnatural, and we will not say that there was a breach of constitutional duty in so accepting it.

A member of the house caused to be spread upon the journal of the house his protest against the passage of the bill. What other reasons he had for protesting are immaterial to this inquiry; but he incorporated into his protest an affidavit made by the secretary and business manager of the "Birmingham Ledger," to the effect that the first publication of the bill in that paper had been made on the twenty-second day before its introduction into the House. But we cannot look to the protest in order to convict the House of wrongdoing, nor to impeach its action in passing the bill in any respect. Section 55 of the Constitution provides that: "Any member of either house shall have liberty to dissent from or protest against any act or resolution which he may think injurious to the public, or to an individual, and have the reason for his dissent entered on the

journal." But it was never intended by this provision that any member should have the power to destroy the conclusive effect of the journal kept by the House, nor that any member might invalidate the action of the House. In spreading his protest upon the journal the member exercises a personal privilege by which he vindicates his own course and appeals to the people. The question here presented had elaborate consideration in the case of *Auditor General v. Board of Supervisors,* 89 Mich. 552, 51 N. W. 483. In that case 16 members of a Senate of 32 protested, with affidavits, that the law in question had been passed by the vote of only 15 members; that is, by less than a quorum. But the court held that the protest could not be looked to as qualifying the assertions of the legislative journal. Speaking of the protest, the court said: "It has no force as legislative action, and cannot be resorted to to nullify a legislative act. It has no force as a statement of fact contradicting the journal. It certainly was not intended that the protest should have greater weight against legislative action than his vote would have." The protest "is on the journal, not by any act of the Legislature, but by reason of the constitutional provision extending to members that privilege." We may add that so long as the protest contained no scandalous matter, and was respectful in tone, the House had no right to deny the member the exercise of his privilege, no matter how ill advised or untrue in fact it may have been. The Supreme Court of Michigan continues: "The protest and affidavit can have no effect whatever, and can no more be considered as impeaching the verity of the journal than would parol or other proof outside of such journal. The right to protest and spread the same at length upon the journal is given by the Constitution to any member; but such protest cannot be

permitted to impeach the journal entries.   *   *   *
We have nothing before us but the journals of that
body, and the assertion of a fact in a protest contradict-
ing the record does not have the force and effect to
overthrow the journal of that body."

But it is said it does not appear when the notice was
published—it may have been years before the session
of the Legislature at which the bill was passed. There
must in reason be a limit to the time during which pub-
lished notice may be effective to accomplish the consti-
tutional purpose. But we hardly think any serious
controversy can be raised in respect to the notice under
consideration. It contains internal evidence enough to
satisfy the mind that the publication was had at a time
not unreasonably remote from the introduction of the
bill. The notice was that the bill would be introduced
at the next special session of the Legislature, which
would convene on the 27th day of July, 1909. We judi-
cially know that the Governor's proclamation conven-
ing the Legislature in special session on the 27th day
of July, 1909, was issued a few weeks before that day,
but for some weeks, as we know by reference to the cur-
rent history of the time, it had been the general expec-
tation that the Legislature would be convened on that
day. By the barest chance imaginable could the notice
have been framed for any unreasonable length of time
theretofore. The possibility of such an occurrence is
negligible.

On the foregoing considerations, we are satisfied with
the conclusion that the injunction cannot be grounded
upon the idea that the journal of the House does not
affirmatively disclose that proper notice was given of
the intention to apply for the passage of the act.

It is further urged that the legislative journal of the
proceedings had in the passage of the act shows that the

bill which passed both houses, and was enrolled and sent to the Governor for approval, had no enacting clause, and, further, that the bill which so reached the Governor was returned by him to the House in which it originated in obedience to a joint resolution adopted by the House and Senate; that the action of the Governor in relinquishing control of the bill without signing or vetoing or offering amendments was illegal; and that whatever else was done to the bill after it was returned to the House under the joint resolution was illegal and the act itself a nullity, all for the reason that the joint resolution was not signed by the Speaker of the House and the President of the Senate and approved by the Governor as required by sections 66 and 125 of the Constitution. On the return of the bill to the House, the journal shows that without amendment it was enrolled again, again signed by the Speaker of the House and the President of the Senate, again transmitted to the Governor, where it received his approval in due course. Section 66 is as follows: "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the Legislature, after the same shall have been publicly read at length immediately before signing, and the fact of reading and signing shall be entered upon the journal," etc. The language of section 125 is: "Every vote, order or resolution to which concurrence of both houses may be necessary, except on questions of adjournment and the bringing on of elections, shall be presented to the Governor, and before the same shall take effect, be approved by him; or, being disapproved, shall be repassed by both houses according to the rules and limitations prescribed in the case of a bill." It is supposed that the case of *People v. Devlin,* 33 N. Y. 269, 88 Am. Dec. 377, gives support

[City of Ensley, et al. v. Simpson.]

to appellee's contention that this bill was not passed in the observance of the constitutional provisions just quoted. The facts of that case were that a bill perfect in every respect was sent to the Governor for approval. Subsequently the House desired to amend the bill, and, without consulting the Senate, requested that the bill be returned, which was accordingly done. Prolonged differences between the House and Senate over the bill resulted in nothing. The court held that the united action of both houss was necessary to recall the bill, and that the bill, having been regularly transmitted to the Governor in the form in which the Legislature passed it, and not recalled by the action of both houses, and not vetoed by the Governor, became law. Likewise in *Harpending v. Haight,* 39 Cal. 198, 2 Am. Rep. 432. If it be assumed that the bill at the time of its return to the House was in form as it now appears, the effect of the decisions relied upon is that the return in the case of the act in hand was ineffectual for any purpose, and the law as it stands upon the statute book was constitutionally enacted as for the objection taken at this point. If, on the other hand, the enrolled copy sent first to the Governor was so variant from the bill as passed by the Legislature as to require material changes on its return, then that presentation of the bill was spurious, and, that fact becoming known, it was the duty of the Governor ex mero to call attention to it, and of the Legislature to recall it for correction, and this, although if the bill had been signed in its shape as first presented to the Governor, it might be impossible to show its variance from the bill passed. So then the question is whether the recall and return of the bill with the consent of both houses and of the Governor shall be held to vitiate subsequent proceedings with respect to the bill which appears to have been dealt with

25—166

in a constitutional way throughout but for the fact that the will of the House and Senate that it be returned is not evidenced by a joint resolution signed by the Speaker of the House and the President of the Senate in the presence of their repective houses. It has been the un- broken custom of the Legislature for many years to send concurrent resolutions requesting the return of bills for correction and amendment to the Governor with the authentication of the clerk and secretary of the two houses only. The Legislature has never con- strued the constitutional requirement that joint reso- lution should be signed by the presiding officers of the two houses to have any relation to concurrent resolu- tions governing such emergencies. These provisions must have been brought forward into the Constitution of 1901 with this legislative construction and practice in the minds of its framers. Many laws are now on the statute books in which this practice was followed. There is a class of legislation which may take the form of a resolution and to which the constitutional require- ment was intended to apply—a form of legislation, in frequent use in this country, chiefly for administrative purposes of a local or temporary character, sometimes for private purposes only, and known in legislative as- semblies as joint resolutions, resolutions, or resolves. This form of legislation is recognized in most Consti- tutions, in which, and in the rules and regulations of legislative bodies, it is put upon the same footing, and made subject to the same regulations, with bills prop- erly so called.—Cushing's Law & Practice of Legisla- tive Assemblies, § 2403. The constitutional provisions in question were doubtless intended for resolutions of that character. While the two houses of the Legisla- ture were yet in session and capable of acting concur- rently with the Governor and with each other, and the

[City of Ensley, et al. v. Simpson.]

matter of the bills was in fieri, they had an inherent right, and it was their plain duty, to correct errors, and no reasonable theory of constitutional requirement would deny the right or duty, nor can any valid reason be assigned for holding that a concurrent resolution, not intended to have the force and effect of law, but merely to facilitate the correction of errors in a bill properly so called, should require authentication in so solemn a way. Of the concurrent action of the two houses and the Governor in this case: there can be no doubt. The indisputable evidence of that fact is to be found in the journals of the two houses and in the bill as finally enrolled and signed by the Governor. The purpose of the Constitution is to assure complete agreement in legislative acts designed to operate as law, and to provide a permanent memorial of the act agreed upon. These purposes are served by the constitutional requirement, complied with in this case, that the bill in its final shape as law shall be so authenticated. We are therefore of opinion the act under review is not open to objection on the ground here under consideration.

We have thus reached the last contention which seems to us to demand special notice. Appellee is the holder and owner of a bond of the city of Ensley issued subsequent to the year 1901. We do not see that the allegation of this fact in the amendment of the bill added strength to complainant's position. It has been settled that the remedies for the enforcement of obligations assumed by municipal corporations, which existed when the contract was made, cannot be impaired by the Legislature, or, if they are changed, a substantial equivalent must be provided. 'Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were

issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the Untied States, and is null and void."—*Mobile v. Watson,* 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620, and authorities there cited. To the same effect are decisions of this court.—*Amy v. Selma,* 77 Ala. 103; *Slaughter v. Mobile County,* 73 Ala. 134; *Edards v. Williamson,* 70 Ala. 145; *Commissioners of Limestone County v. Rather,* 48 Ala. 433. There is no complaint of any impairment of complainant's security for his debt. Appellee's contention just here takes this form: Under section 216 of the Constitution cities and towns are authorized to levy a tax for general purposes. The city of Birmingham is authorized to levy an additional tax of one-half of 1 per centum to be devoted exclusively to the payment of the interest on the bonded indebtedness of that city existing at the time of the ratification of the Constitution and to the creation of a sinking fund for the payment of its bonded indebtedness at maturity. Ensley was also authorized to levy an additional tax of one-half of 1 per centum whenever a majority of the voters of that city should so determine, with the proviso that the special purposes for which the additional tax was to be levied should be stipulated in the call for the election. Ensley held an election by which it was stipulated that one-tenth of the additional tax should go into and form a sinking fund for the payment of interest on bonds to be issued for the construction of a system of storm sewers. Complainant's bond belongs to this issue. The argument is that the merger of Ensley into Birmingham will destroy this security. If it be that the general credit of the larger city is not a substantial equivalent for the special security contracted for, which is not alleged and which we cannot assume

[City of Huntsville v. Madison County.]

to know in the absence of allegation and proof, under the authorities cited above, the legal obligation of that security remains unimpaired, and a remedy for the diversion of funds tending to impair it in fact may be had on proper application to the courts. This proposition is sustained by the authorities cited by the appellee as well as those hereinabove cited.—*United States ex rel. Von Hoffman v. City of Quincy,* 4 Wall. 535, 18 L. Ed. 403.

We have found in appellee's case no sufficient warrant for declaring the act in question unconstitutional. The decree of the chancery court will be reversed, and a decree here rendered dismissing the bill.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.