The single issue in this case is whether the legislature, under its plenary power, may constitutionally change by local law the boundaries of a municipality to include property not contiguous[1] to the municipality's *Page 534 
boundaries as previously fixed. Stated otherwise, the question is whether Act No. 92708, Ala. Acts 1992, violates any one of three constitutional restraints on the legislature's power: Article IV, §§ 104(5), 104(18), and 105, of the Constitution of Alabama, 1901.
Act No. 92-708, a local law,[2] became effective on October 7, 1992. It reads:
"AN ACT
 "To alter or rearrange the boundary lines of the City of Vestavia Hills, Jefferson County, Alabama, so as to include within the corporate limits of Vestavia Hills, Alabama, certain other territory in Jefferson County, Alabama. "Be it Enacted by the Legislature of Alabama:
 "Section 1. The boundary lines of the City of Vestavia Hills, Jefferson County, Alabama, be, and the same are hereby altered or rearranged so as to include all of the territory heretofore encompassed by the corporate limits of the City of Vestavia Hills, Alabama, and in addition thereto the following described territory, to-wit:
 "[The act at this point described two parcels. The metes and bounds descriptions of Parcel I and Parcel II are omitted here because they are unnecessary for resolution of the issue presented.]
 "A map of the above described territory showing the relationship of such territory to the corporate limits of the City of Vestavia Hills, Alabama, is attached hereto as Exhibit 'A' and is incorporated herein by reference. . . ."[3]
Ala. Acts 1992, at 198, 204. The act by its exact words "altered or rearranged" the boundary lines of the City of Vestavia Hills (hereinafter "Vestavia") to include two separate parcels that are more than three miles from the nearest existing Vestavia boundary; therefore, neither parcel was or is contiguous to Vestavia.
Thereafter, the City of Birmingham and Richard Arrington, Jr., as its mayor (hereinafter "Birmingham"), filed a complaint alleging that Act No. 92-708 was unconstitutional and seeking declaratory and injunctive relief. Vestavia denied by answer. After a hearing, the circuit court held that Act No. 92-708 did not violate any provision of the Constitution of 1901. Birmingham appealed.
Section 104 of the Constitution prohibits the passage of any local laws in 31 specific areas. Birmingham argues that Act No. 92-708 falls into two of these specific areas, those mentioned in § 104(5) and § 104(18). Furthermore, Birmingham also argues that Act No. 92-708 violates § 105 because, Birmingham says, it is a local law addressing an area already provided for by general laws. See Ala. Code 1975, § 11-41-1 et seq. (general laws for municipal incorporation); § 11-42-1 et seq. (general laws on annexation and merger).
Vestavia argues that the act does not violate any provision of the Constitution and that the legislature acted according to its express power to "alter or rearrange the boundary of a city," as stated in the proviso of § 104(18). Vestavia also challenges the contention that the act violates § 105, for two reasons: first, it says, the legislature is expressly authorized to change a city's boundaries, by the proviso included in § 104(18), and second, it says, the act makes a territorial change in the boundaries of Vestavia that *Page 535 
cannot otherwise be made under the present general laws.
The relevant portions of § 104 provide:
 "The legislature shall not pass a special, private, or local law in any of the following cases:
". . . .
"(5) Incorporating a city, town, or village;
". . . .
 "(18) Amending, confirming, or extending the charter of any private or municipal corporation, or remitting the forfeiture thereof; provided, this shall not prohibit the legislature from altering or rearranging the boundaries of the city, town or village [emphasis added];
". . . .
 "The legislature shall pass general laws for the cases enumerated in this section."
Section 105 provides:
 "No special, private, or local law . . . shall be enacted in any case which is provided for by a general law . . . and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court. . . ."
A local law must comply with both § 104 and § 105 of Alabama's 1901 Constitution. Drummond Co. v. Boswell, 346 So.2d 955, 957
(Ala. 1977).
The standard of review for determining the constitutionality of a statute was stated in State Board of Health v. GreaterBirmingham Ass'n of Home Builders, Inc., 384 So.2d 1058, 1061
(Ala. 1980):
 "Before turning to the constitutional issue posed in this case, it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed to be constitutional. As we stated in Mobile Housing Board v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969):
 " 'Every presumption is in favor of the constitutionality of an act of the legislature and this court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the constitution.' "
 "We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations. See Ex parte Huguley Water System, 282 Ala. 633, 213 So.2d 799 (1968)."
In Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala. 1984), this Court stated:
 "In determining whether the act is constitutional, we are bound by the following presumption:
 " '[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.' "
 Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)."
See Crosslin v. City of Muscle Shoals, 436 So.2d 862, 863 (Ala. 1983).
Unless restricted by the Constitution, the legislature's power with respect to municipalities is plenary. Trailway OilCo. v. City of Mobile, 271 Ala. 218, 222, 122 So.2d 757, 760
(1960). Section 104(5) of the Alabama Constitution specifically prohibits the legislature from enacting local laws to incorporate municipalities. Birmingham contends that this constitutional provision restricts the legislature's power to annex noncontiguous territory by local act, because, Birmingham argues, the act creates a different municipality and is, essentially, a local law incorporating a municipality. Birmingham argues that the act, in effect, incorporates two noncontiguous unincorporated areas as new cities, creating "Vestavia 2" and "Vestavia 3," thus violating § 104(5). Vestavia responds with the argument that § 104(5) has no application here because, it says, the act is an annexation law and not a law "incorporating a city, town, or village," as proscribed by § 104(5). *Page 536 
Vestavia correctly asserts that annexation and incorporation are two distinct subjects. Legislation dealing with each carries different definitions, each is dealt with in a different chapter of the Alabama Code, and each requires different prerequisites under Alabama law. The verb "to annex" is defined as "to add or unite to something already existing." 3A C.J.S. Annex (1973) (emphasis added). While "annex" implies some type of physical connection or joinder, the term does not always imply that actual contact is necessary for annexation.Id.; Black's Law Dictionary 88 (6th ed. 1990). "Incorporation" is defined as "[t]he act or process of forming or creating a corporation. The formation of a legal or political body, with the quality of perpetual existence and succession, unless limited by the act of incorporation." Black's Law Dictionary
766 (6th ed. 1990) (emphasis added). The municipal corporation of Vestavia had previously been formed. By Act No. 92-708, the legislature has added the property described therein to Vestavia. See Fetters v. City of Hoover, 518 So.2d 55, 58 (Ala. 1987) (described by the court as an annexation case, and Meeksv. Town of Hoover, 286 Ala. 373, 240 So.2d 125 (1970), distinguished as an incorporation case); Fetters, 518 So.2d at 59 (Torbert, C.J., dissenting). The question here is whether the Constitution prohibits the legislature, by local act, from annexing, to an existing municipality, land that is not contiguous to the city.
Neither the Alabama Constitution nor Alabama's general annexation laws require that an area to be annexed into a municipality meet the exact requirements of an area to beincorporated as a city. For example, homogeneity and minimum population limits are statutory requirements for incorporation[4]
but are not always necessary for annexation.[5]
Section 104(5) deals solely with municipal incorporations. InCity of Ensley v. Simpson, 166 Ala. 366, 52 So. 61 (1909), this Court held that § 104(5) limits only the legislature's authority to incorporate a city by local law and does not prohibit the disincorporation of a municipality by local law.166 Ala. at 375, 52 So. at 64. Section 104(5) does not prohibit the legislature from altering a city's boundary by local law. That provision of the Constitution addresses the legislature's power to incorporate municipalities and does not address the legislature's power to annex territory to existing municipalities. We hold that Act No. 92-708 does not violate Article IV, § 104(5), of the Alabama Constitution.
Section 104(18) of the Alabama Constitution, in its main clause, prohibits the legislature from amending the charter of a municipality by local law, but the proviso of § 104(18) expressly allows it to "alter or rearrange" a city's boundaries. While the main clause is another restriction on the legislature's plenary power, the proviso is not. The dispute here involves the interpretation of the proviso.
Birmingham concedes that the proviso is an exception to the main clause's restriction on the legislature's ability to amend city charters by local law but insists that the proviso allows only boundary changes that expand or contractcontiguous territory, consistent with the general laws on annexation. Vestavia contends that the proviso could have either of the following two interpretations: that a boundary alteration is an amendment to a city's charter, which, unless excepted, would be prohibited by the main clause of § 104(18), or that a legislative boundary change is an action having nothing to do with a municipality's charter and would be within the legislature's power even if the proviso did not exist. However, Vestavia argues that both of these interpretations reach the same result, which is that Act 92-708 is expressly permitted by § 104(18). We agree.
"Boundary" is generally defined as "a line or object indicating the limit or furthest extent of a tract of land or territory." 11 *Page 537 
C.J.S. Boundaries § 1 (1938). Therefore, any annexation of territory, contiguous or noncontiguous, done by either general or local law, would result in the alteration or rearrangement of the boundaries of a municipality. Here, because the geographical limit of Vestavia was expanded to include the parcels described in Act No. 92-708, Vestavia's boundaries were automatically changed by the act.
This boundary change had nothing to do with Vestavia's charter. The term "charter" has been defined as "[a] city's organic law." Black's Law Dictionary 235-36 (6th ed. 1990). Under Alabama law, "the charter of a corporation consists of its articles of incorporation taken in connection with the law under which it was organized; or a charter is an act of a legislature whereby a corporation is created and its franchise is defined." State ex rel. Carter v. Harris, 273 Ala. 374, 376,141 So.2d 175, 176 (1961). Substantive laws that establish a city's form of government or prescribe a city's powers are part of its charter. Trailway Oil Co. v. City of Mobile, 271 Ala. 218,223-24, 122 So.2d 757, 762 (1960). A change in a city's geographical territory is not a change in the substantive laws establishing the city's form of government or prescribing its powers, as created by statute, but only a change in the area in which those prescribed governmental powers can be exercised.
A boundary change is not an amendment to a city's charter. In the landmark case of City of Ensley v. Simpson, 166 Ala. 366,52 So. 61 (1909), this Court held that the disincorporation of a city or town was not an amendment to its charter; neither was the alteration or rearrangement of its boundaries:
 "Nor is the alteration or rearrangement of the boundaries an amendment of the charter of a municipality. The Constitution clearly recognizes this fact by excepting an act altering or rearranging boundaries from the prohibition against local laws amending charters."
City of Ensley, 166 Ala. at 376, 52 So. at 65.
In State ex rel. Brooks v. Gullatt, 210 Ala. 452, 98 So. 373
(1923), the Court elaborated on the point that while a boundary rearrangement may enlarge the powers of a municipality, this fact is merely incidental and does not amend the charter of a municipality. 210 Ala. at 456, 98 So. at 377; see Trailway OilCo. v. City of Mobile, 271 Ala. 218, 122 So.2d 757 (1960) (holding that a change in the police jurisdiction of the City of Mobile, being similar to a change in the city's corporate limits, was not an amendment to Mobile's charter or a modification of Mobile's powers). Section 104(18) prohibits only changes in the substantive powers of a city by local law. Therefore, even if the proviso of § 104(18) did not exist, local annexation laws changing or rearranging a city's boundaries do not violate § 104.
Birmingham argues that when the 1901 Constitution was adopted the only general law in existence relating to municipalities limited a city's power to annex land to that which was contiguous to its boundaries and, therefore, that we should construe the language of the proviso in § 104(18) as limiting the power of the legislature to annex by local act only contiguous land by altering or rearranging the boundary of a city or town. See Ala. Code 1896, § 2967. This 1896 statute allowed for the "alteration or change of . . . the boundaries of the town" by either a petition and subsequent election or written consent of two-thirds of the property owners in the area to be annexed.[6] Birmingham and Vestavia agree that this statute provided only for the annexation of contiguous
property. Birmingham urges that the framers of the Constitution, likely using the 1896 statute as the source of the "altering or rearranging" language, merely offers a local law alternative for reaching the same result as that of the general laws, the annexation of contiguous property. This argument is at best speculative. *Page 538 
Nothing in the Constitution suggests that the framers meant anything more than is said by the words they used. This Court said in McGee v. Borom, 341 So.2d 141, 143 (Ala. 1976):
 "In construing a constitutional provision, the courts have no right to broaden the meaning of words used and, likewise, have no right to restrict the meaning of those words. We are, therefore, not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution. McPherson v. Blacker, 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1892)."
A proviso is to be strictly construed and "limited to objects fairly within its terms." 16 C.J.S. Constitutional Law § 28 (1984). This proviso excludes the "altering or rearranging" of boundaries from the legislative limitation of the main clause, and it does not mention contiguity or noncontiguity. Thus, from the plain words of the Constitution, the legislature is left with the power to change a city's boundaries by local law, without any restriction to territory that is contiguous. SeeState ex rel. Brooks v. Gullatt, 210 Ala. 452, 456, 98 So. 373,377 (1923); City of Ensley v. Simpson, 166 Ala. 366, 376,52 So. 61, 64 (1909); Ensley v. Cohn, 149 Ala. 316, 319-20,42 So. 827, 828 (1907); cf. Trailway Oil Co. v. City of Mobile,271 Ala. 218, 122 So.2d 757 (1960). This Court in McGee v.Borom, 341 So.2d 141 (Ala. 1976), further stated the "general rule" as restated by the Florida Supreme Court:
 " 'We are called on to construe the terms of the Constitution, an instrument from the people, and we are to effectuate their purpose from the words employed in the document. We are not permitted to color it by the addition of words or the engrafting of our views as to how it should have been written.. . . [I]t must be presumed that those who drafted the Constitution had a clear conception of the principles they intended to express, that they knew the English language and that they knew how to use it, that they gave careful consideration to the practical application of the Constitution and arranged its provisions in the order that would most accurately express their intention.' "
341 So.2d at 143-44 (emphasis added) (quoting Ervin v. Collins,85 So.2d 852, 855 (Fla. 1956)). The proviso of § 104(18) expressly preserves the power of the legislature to alter or rearrange a municipality's boundary as it sees fit. See also,e.g., State ex rel. Brooks v. Gullatt, 210 Ala. 452, 456,98 So. 373, 377 (1923).
Finally, Birmingham contends that even if § 104(18) permits the legislature, by local law, to rearrange the boundaries of a city, Act No. 92-708 violates § 105 of the 1901 Alabama Constitution. Section 105 prohibits the passage of a local law in an area provided for by general law. E.g., Peddycoart v.City of Birmingham, 354 So.2d 808, 813 (Ala. 1978); Note, LocalLegislation in Alabama: The Impact of Peddycoart v. City ofBirmingham, 32 Ala.L.Rev. 167, 187 (1980).
Under § 104, "the legislature shall pass general laws" for the 31 enumerated areas in which it is prohibited from passing local laws, including incorporating a city (§ 104(5)) and amending a city's charter (§ 104(18)). Following Birmingham's reasoning, one would conclude that, because of the passage of municipal corporation statutes providing for methods of incorporation, annexation, and merger,[7] the subject of annexation is "subsumed" by general laws, and, therefore, that Act No. 92-708 contravenes § 105. On the contrary, Vestavia argues that because § 104(18) expressly authorizes the legislature to change the boundaries of a city by local act, Act No. 92-708 does not conflict with § 105, and further, that if § 104(18) were not in the Constitution, then § 105 would still not be violated because, Vestavia argues, the act does not involve a subject covered by any existing general law in Alabama.
We hold that Act No. 92-708 does not violate § 105 of the Constitution. The legislature has authorized municipalities to annex territory: by an election, in accordance with Ala. Code 1975, § 11-42-1 et seq.; by petition *Page 539 
of all "owners,"[8] in accordance with § 11-42-20 et seq.; and by "tax exempt elections,"[9] in accordance with § 11-42-40 et seq.City of Birmingham v. Wilkinson, 516 So.2d 585, 590 (Ala. 1987); City of Leeds v. Town of Moody, 294 Ala. 496, 500,319 So.2d 242, 245 (1975). By these laws, the legislature has authorized cities to annex territory by legislatively prescribed procedures. These general laws do not address the authority of the legislature to annex territory to existing cities.[10] The authority of the legislature is limited only by the Constitution.
The general laws provide for municipal governments, voters,or property owners to annex contiguous territories into an existing *Page 540 
city.[11] By Act No. 92-708, the legislature has altered or rearranged a city's boundaries to include noncontiguous
territory. No general law subsumes the subject matter of Act No. 92-708. As conceded by both parties, the two noncontiguous
tracts of land at issue could not have been annexed under any existing general laws.
The courts, according to § 105, must decide if the "matter" of a local law is "provided for" by a general law. As this Court held in Drummond Co. v. Boswell, 346 So.2d 955, 958 (Ala. 1977):
 "It is not the broad, overall subject matter which is looked to in determining whether the local act, taken together with the general law, is violative of § 105; rather, it is whether the object of the local law is to accomplish an end not substantially provided for and effectuated by a general law."
The "matter" of Act No. 92-708 was not substantially provided for by a general law, because the annexation would not have been possible under the preexisting annexation laws. Judge McElroy, in his article on § 105, points out that the advocates of this section of the Constitution never intended to abolish the legislature's power to pass a local law when no general law provided for its result. Judge J. Russell McElroy, No . . .Local Law . . . Shall be Enacted in Any Case Which is Providedfor by a General Law, 7 Ala. Law. 243, 259 (1946); see also
Note, Local Legislation in Alabama: The Impact of Peddycoart v.City of Birmingham, 32 Ala.L.Rev. 167, 181-82 (1980). A local law violates § 105 only when the substance of the local law is already substantially provided for under an existing general law; the substance of Act No. 92-708 is not substantially provided for under a general law.
In City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61 (1909), the seminal case on this subject, this Court considered the issue whether a legislative act, referred to as the "Greater Birmingham Act," violated § 104(5), § 104(18), and § 105 of the Alabama Constitution.[12] The act, a local law enacted in the 1909 special session of the legislature, extended the boundaries of Birmingham by annexing several contiguous and noncontiguous
municipalities.[13] However, the municipalities were annexed along with "much intervening unincorporated territory," making the annexed property contiguous in its entirety once the annexation was completed; i.e., no noncontiguous territory remained after the annexation.
In City of Ensley, this Court rejected the argument that, according to § 105, the general annexation laws in essence "preempted" the legislature from passing any local annexation law. The general laws did provide a method for annexing this territory into Birmingham, but as the City of Ensley Court stated, "the same result might have been obtained by a tedious and embarrassing process of repeated additions to the territory [of Birmingham]." 166 Ala. at 371, 52 So. at 63. Furthermore, the Court continued:
 "[T]he Legislature had the right to weigh the advantages of the scheme as a whole and enact law accordingly to accomplish the desired end at one stroke. Under no general law could the same considerations be submitted to the same electorate or the same result reached in the same way."
166 Ala. at 372, 52 So. at 63 (emphasis added). In City ofEnsley, as here, the argument *Page 541 
was advanced that because general annexation laws allow only for boundary rearrangements involving contiguous property, the same requirement should apply to local laws. The Court rejected that argument and said:
 "The subject of legislation in the general law is the alteration or rearrangement of boundaries as affecting contiguous municipalities and unincorporated territory. The subject-matter dealt with in the special act is the alteration or rearrangement of boundaries as affecting noncontiguous municipalities as well. Considered in their totality, the two acts are not identical as to subject-matter. We therefore conclude that the special act is not obnoxious to section 105 of the Constitution."
166 Ala. at 374, 52 So. at 64 (emphasis added).
In two other cases, this Court has also upheld local acts against a § 105 challenge. In State ex rel. Brooks v. Gullatt,210 Ala. 452, 98 So. 373 (1923), the Court upheld a local act that altered the boundaries of Phenix City to include the city of Girard and certain unincorporated territory.210 Ala. at 453, 98 So. at 374. The Court stated:
 " '[I]f the local bill purposes something different from the provisions of the general law, and not within the catalogue of section 104, and in a case where the relief may not be had in some proceeding outside of the Legislature, how has it been provided for, and where is the inhibition to enact the local law? It seems, then, that this provision of the Constitution [§ 105] was intended to prohibit the enactment of special, private, or local laws to meet the purposes of particular cases which may be accomplished by proceedings outside of the Legislature under the provisions of general statutes enacted to meet all cases of that general character.' "
210 Ala. at 456, 98 So. at 377 (quoting Brandon v. Askew,172 Ala. 160, 163-64, 54 So. 605, 607 (1911)). Furthermore, inJohnson v. State ex rel. City of Birmingham, 245 Ala. 499,17 So.2d 662 (1944), the Court held that a local law providing for an annexation election by the voters in the area to be annexed was valid under § 105 because, even though the general law also provided for a method of election, this election process was "substantially a different method of annexation than that provided for by general law." 245 Ala. at 503, 17 So.2d at 664. The mere fact that there are general laws relating to a municipality's power to annex contiguous territory does not prevent the legislature, by local law, from annexing noncontiguous territory into a city.
In this case, the legislature enacted a local law in response to a city's need to annex noncontiguous property. Vestavia had no choice but to turn to the legislature, because both the City of Mountain Brook and Birmingham destroyed the contiguity between the two parcels and Vestavia, and neither of those two cities was willing to sacrifice some of its property to allow Vestavia to establish contiguity. According to Peddycoart v.City of Birmingham, 354 So.2d 808, 815 (Ala. 1978):
 "[L]ocal legislation reflecting responses to local needs may be enacted. It is only when those local needs already have been responded to by general legislation that Section 105 of our state Constitution prohibits special treatment by local law."
The legislature was responding to Vestavia's need, which could not be responded to under existing general laws.
Moreover, the legislature's action was not unprecedented. The parties agree that on previous occasions the legislature has enacted local laws to annex noncontiguous territories into municipalities in Alabama. For example, the legislature has annexed noncontiguous property, including an airport, a municipal golf course, water and sewage treatment plants, etc., into cities such as Lincoln, Forkland, Fairhope, and Sylacauga.[14] As recently as February 1994, the legislature annexed noncontiguous property into Hartselle.[15] While some of these cities later annexed *Page 542 
property connecting the noncontiguous tracts, the fact remains that, as in this case with Vestavia, the property was noncontiguous when the legislature annexed it.
No provision of the Alabama Constitution limits the legislature's broad authority with respect to municipalities and their boundaries so as to prevent the legislature from adopting a local act annexing noncontiguous territory to a municipality.
AFFIRMED.
MADDOX, ALMON, HOUSTON, KENNEDY and COOK, JJ., concur.
[1] Contiguity does not require a substantial common boundary; rather, contiguity requires only a "touching at some point."City of Dothan v. Dale County Comm'n, 295 Ala. 131,324 So.2d 772 (1975).
[2] Both parties to this case concede that Act No. 92-708 is a local law. According to § 110 of the Alabama Constitution, as amended by Amendments No. 375 and No. 397, a "general law" is defined as "a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class." See, e.g., Peddycoart v.City of Birmingham, 354 So.2d 808, 811 (Ala. 1978). Furthermore, a "local law" is "a law which is not a general law or a special or private law," and a "special" or "private law" is defined as a "law which applies to an individual, association or corporation." Ala. Const. of 1901, art. IV, § 110 (amended by Ala. Const. amend. 375 (1978) and amend. 397 (1982)).
[3] Regardless of the existence of an attached map, the metes and bounds description of the property in the act demonstrates that it is not contiguous to Vestavia Hills.
[4] Ala. Code 1975, § 11-41-1.
[5] See City of Birmingham v. Wilkinson, 516 So.2d 585 (Ala. 1987) (holding that in "Article 3 tax exempt elections" the annexed territory can be irregular in shape and does not have to be homogeneous in character); City of Birmingham v. Mead Corp.,372 So.2d 825 (Ala. 1979) (approving the annexation of "ten square miles of undeveloped territory" based on only 60 votes).
[6] More specifically, the 1896 statute permitted 10 adult males by petition in writing to the judge of probate to propose changes in the boundaries of a town and if approved by two-thirds of the owners of the real estate within the proposed extension, the boundaries of a town could be extended or altered.
[7] See Ala. Code 1975, § 11-41-1 et seq. (general laws for municipal incorporation); § 11-42-1 et seq. (general laws on annexation and merger).
[8] This annexation method is available to municipalities with 2,000 or more persons. Ala. Code 1975, § 11-42-20 et seq.
[9] This annexation method is available to municipalities with 25,000 or more persons. Ala. Code 1975, § 11-42-40 et seq.
[10] The pertinent general municipal corporation laws involving annexation are as follows:
"CHAPTER 42.
"ALTERATION OF CORPORATE LIMITS
"ARTICLE 1.
"ANNEXATION OF TERRITORY BY MUNICIPALITIES GENERALLY.
 "§ 11-42-1. Applicability of provisions of article; provisions of article not exclusive.
 "Any town or city may from time to time extend its corporate limits in the manner set forth in this article, but the provisions of this article shall not preclude any city or town from extending its corporate limits in any other way or manner that may be authorized by law.
 "§ 11-42-2. Annexation election and proceedings generally; proceedings where parties consent to annexation.
 "Whenever the council shall pass a resolution to the effect that the public health or public good requires that certain territory (described in the resolution) shall be brought within the limits of the city or town: . . . .
"§ 11-42-3. Subsequent extensions of corporate limits.
 "(a) Any city or town having extended its corporate limits under the provisions of this article or other law may again extend its corporate limits under this article or under any other law authorizing an extension of corporate limits by such city or town.
". . . .
"ARTICLE 2.
"ANNEXATION OF TERRITORY BY MUNICIPALITIES
OF 2,000 INHABITANTS OR MORE.
". . . .
"§ 11-42-21. Annexation proceedings.
 "Whenever all of the owners of property located and contained within an area contiguous to the corporate limits of any incorporated municipality . . . shall sign and file a written petition with the city clerk of such municipality requesting that such property or territory be annexed to the said municipality, and the governing body of such municipality adopts an ordinance assenting to the annexation of said property to such municipality, the corporate limits of said municipality shall be extended and rearranged so as to embrace and include such property and such property or territory shall become a part of the corporate area of such municipality upon the date of publication of said ordinance. . . .
"§ 11-42-22. Subsequent extensions of corporate limits.
 "Any incorporated municipality having extended its corporate limits under the provisions of this article or any other law may again extend its corporate limits under this article or under any other law authorizing an extension of the corporate limits by such incorporated municipality.
"§ 11-42-23. Provisions of article not exclusive.
 "The provisions of this article shall in no wise preclude any municipality from extending its corporate limits by annexation in any other way or manner that may be authorized by law.
". . . .
"ARTICLE 3.
"ANNEXATION OF TERRITORY BY CITIES OF
25,000 INHABITANTS OR MORE.
 "§ 11-42-40. Applicability of provisions of article; provisions of article not exclusive.
 "Any city having 25,000 inhabitants or more . . . may extend its corporate limits in the manner and with the rights, powers and privileges as set forth in this article, but the provisions of this article shall not preclude any city from extending its corporate limits in any other way or manner that may be authorized by law.
"§ 11-42-41. Passage of resolution to annex territory.
 "The council or governing body of the city may pass a resolution to the effect that the public health or public good requires that certain territory (described in the resolution) shall be brought within the limits of the city.
". . . .
"§ 11-42-54. Subsequent extensions of corporate limits.
 "Any city having extended its corporate limits under the provisions of this article or any other act or law may again extend its corporate limits under this article or under any other act or law authorizing an extension of corporate limits by such city."
(Emphasis added.)
[11] Although Act No. 92-708 does not concern the annexation by a municipality of another municipality, we note that §§11-42-100.1 through -134 of the Alabama Code provide for municipalities to annex contiguous municipalities. Further, §§11-42-150 through -167, regarding the annexation by municipalities of noncontiguous municipalities, state that the boundary lines of the annexing municipality must be "within one mile or less of the boundary line" of the annexed municipality. However, the noncontiguous territories at issue here are not municipalities.
[12] As touched on briefly earlier in this opinion, the Court inCity of Ensley held that the act did not violate either § 104(5) or § 104(18).
[13] The "Greater Birmingham Act" merged a number of municipalities into Birmingham, including territory then included within the cities or towns of Avondale, Woodlawn, East Lake, North Birmingham, North Haven, Graymont, Elyton, West End, Pratt City, Wylam, and Ensley, resulting in an overall enlargement of the city's area. The act also excluded other territories from Birmingham. City of Ensley, 166 Ala. at 369-70,52 So. at 62-63.
[14] Lincoln-Act No. 82-543 and Act No. 84-606; Forkland — Act No. 83-635; Fairhope — Act No. 84-668 and Act No. 88-747; Sylacauga-Act No. 90-422 and Act No. 92-509.
[15] Act No. 94-95.