The City of Daphne and the City of Spanish Fort are both located in Baldwin County. Each disputes the validity of purported annexations by the other of certain parcels of property in Baldwin County. The trial court entered a judgment in favor of Daphne, holding that its purported annexation of the disputed parcels had been valid, and against Spanish Fort, holding that its purported annexation of the disputed parcels was invalid because those parcels had already been annexed by Daphne. The trial court also held that Spanish Fort's purported annexation of the disputed properties, along with its purported *Page 569 
annexation of other property in Baldwin County that Daphne had not purported to annex, was invalid because the local act of the Legislature authorizing the referendum by which Spanish Fort had purported to annex that property was unconstitutional. We affirm in part and reverse in part.
 I. Facts and Procedural History
Daphne and Spanish Fort are adjacent municipalities situated on the eastern shore of Mobile Bay in Baldwin County. The genesis of the dispute between the two cities appears to have come in 1998. In March of that year, Spanish Fort caused to be published in a Baldwin County newspaper notice of that city's intent to seek a local act of the Legislature authorizing a referendum in which the voters of certain areas of Baldwin County would decide whether those areas would be annexed into Spanish Fort. That notice was published on March 7, 14, 21, and 25, 1998, and it included a detailed legal description of the property that Spanish Fort would seek to have the Legislature include in the area to be annexed into Spanish Fort upon the passage of a referendum of qualified electors living in the affected area.
While considering the bill proposed by Spanish Fort, the Legislature amended it to remove approximately half of the property Spanish Fort had initially sought to have included in the area to be annexed. The property removed from the provisions of the bill by the amendment generally lay to the east and the north of the existing Spanish Fort city limits. The Legislature approved the bill as amended, and it became effective with the signature of Governor Fob James on May 6, 1998. Act. No. 98-634, Ala. Acts 1998 (Reg. Sess.). The act provided that the corporate limits of the City of Spanish Fort would be altered to include the property described in the act, provided that "the qualified electors who reside within the territory to be annexed [approved the annexation] in a referendum to be held" on a day selected by the Baldwin County probate judge. Id. (see § 4). The probate judge scheduled the referendum for July 28, 1998.
In a series of meetings between July 6, 1998, and July 22, 1998, the Daphne City Council purported to annex into Daphne several parcels of property that had been included in the area subject to the referendum approved by the Legislature in Act. No. 98-634. Those parcels of property may be described as falling into two general groups, the "mall property" and the "causeway property." The mall property lies north and east of the intersection of Interstate 10 and U.S. Highway 98 in western Baldwin County. The causeway property is composed of several separate parcels of property lying, generally, along U.S. Highway 90 between the then existing western boundary of Spanish Fort and the Mobile-Baldwin County line. On July 28, the Spanish Fort annexation referendum was conducted, and the voters approved the annexation by a vote of 129-72.
On August 5, 1998, Daphne filed an action in the Baldwin Circuit Court, seeking a judgment declaring Daphne's purported annexation of the disputed property to be valid and declaring Spanish Fort's purported annexation of the same property by the July 28 referendum to be invalid.[1] Spanish Fort answered and filed a counterclaim, seeking a judgment declaring that Daphne's purported annexation of the disputed property was invalid and declaring that the property had in fact been annexed into Spanish Fort by the July 28 referendum.
Following a trial, the Baldwin Circuit Court entered a judgment in favor of Daphne and against Spanish Fort, as to all the disputed property. The trial court concluded that the disputed properties had *Page 570 
been validly annexed into Daphne before the July 28 referendum was conducted. Further, the trial court held that the July 28 referendum was void, because, the court held, Act No. 98-634 was unconstitutional (for reasons discussed below). Spanish Fort appealed.
 II. Discussion
For clarity's sake, we divide our discussion into three general sections. In section A, we will discuss the effect of the July 28 referendum. In Section B, we will discuss Daphne's purported annexation of the mall property. In section C, we will discuss Daphne's purported annexation of the causeway property.
 A. The July 28 referendum
By its adoption of Act No. 98-634, the Legislature expressly authorized the referendum that was later conducted on July 28. As this Court has held, "[t]he legislature's power, with regard to municipalities, is plenary, except as limited by the Alabama Constitution." Town of Vance v. City of Tuscaloosa,661 So.2d 739, 742 (Ala. 1995). That plenary power includes the power to establish and adjust municipal boundaries. Opinion of theJustices No. 181, 277 Ala. 630, 173 So.2d 793 (1965). When considering whether that power has been exercised in accordance with the Constitution, courts must apply the following well-settled standard:
 "[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simply statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9,18 So.2d 810, 815 (1944).
Daphne argues that the Legislature's adoption of Act No. 98-634 violated Art. IV, § 106, of the Alabama Constitution, as amended by Amendment No. 341, which prohibits the adoption of a "local act," such as Act No. 98-634,[2] "unless notice of the intention to apply therefor shall have been published." We conclude, for the reasons discussed below, that it is "clear beyond reasonable doubt" that the Act was adopted in violation of § 106.
 (1) Journals of the House and Senate
Spanish Fort argues that the question whether the § 106 requirements were met is conclusively resolved by information contained in the Journals of the House of Representatives and the Senate indicating that notice had been published. Even if we assume, arguendo, that the Journals do prove the publication of the notice, Act No. 98-634 is nonetheless invalid because of the way the Legislature amended the bill after the publication had been made, as we will explain.
 (2) Requirements of § 106
In a relatively recent case, this Court directly addressed the requirements of § 106 as they relate to local acts providing for referendums concerning annexation — the very situation presented in this case. In City of Tuscaloosa v. Kamp,670 So.2d 31 (Ala. 1995), after reviewing previous cases concerning the requirements of § 106 in annexation cases, this Court wrote:
 "[W]e have concluded that an annexation bill, whether notice of it has been published in summary or in detailed form, that does not provide for a referendum on a proposed annexation, may be amended by the legislature to eliminate a portion of the territory as described in the notice without violating § 106." *Page 571 
670 So.2d at 34 (emphasis added). That general rule does not apply, however, as indicated by the wording emphasized above, where the bill provides for a referendum. In explaining the reasons for explicitly excluding from the general rule annexation bills calling for a referendum, this Court stated:
 "Our primary concern [is that] citizen involvement in the legislative process could have been reduced by the referendum provision in the bill. In other words, there was a very real possibility that many of those who would have been affected by the annexation did not participate in the legislative amendment process, believing instead that the affected voters would reject the annexation in the forthcoming referendum."
Id. at 34-35. We have carefully considered the arguments of Spanish Fort encouraging us to revisit that holding in Kamp. However, we are not persuaded to do so. Therefore, because the Legislature amended the bill that would become Act No. 98-634 by eliminating a substantial portion of the territory that had been included in the published notice, and because the bill was one calling for a referendum, a fact invoking the rule of Kamp, we conclude that the Act was enacted in violation of § 106 of the Alabama Constitution.[3]
 B. The Mall Property
The primary Code section governing our consideration of Daphne's attempts to annex the mall property is § 11-42-21, Ala. Code 1975. That section provides that property contiguous to a city's existing corporate limits may be annexed into that city if: (1) the owners of the affected property petition the city for annexation; (2) the governing body of the city adopts an ordinance assenting to the annexation; and (3) the property does not already lie within the corporate limits or police jurisdiction of another municipality. Ala. Code 1975, § 11-40-10, defines the limits of police jurisdictions associated with Alabama municipalities:
 "The police jurisdiction in cities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits, and in cities having less than 6,000 inhabitants and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of such city or town."
If two cities are so situated that their police jurisdictions overlap, and one of them seeks to annex property lying within the overlapping police jurisdictions, § 11-42-21 provides that the city seeking to annex the property may annex it by the procedure of § 11-42-21, up "to a boundary which is equidistant from the respective corporate limits of each of such incorporated municipalities which have overlapping police jurisdictions."
It is undisputed that the owners of the mall property petitioned Daphne for annexation, as required by § 11-42-21. However, it is also undisputed that the mall property lay within the overlapping police jurisdictions of Daphne and Spanish Fort. Therefore, we must consider whether Daphne's purported annexation of the mall property complied with the contiguity requirement and the equidistant-boundary limitation of § 11-42-21.
The Daphne City Council purported to annex the mall property in phases through the adoption of a series of ordinances: Ordinance no. 1998-17 (phase one); no. 1998-18 (phase two); no. 1998-20 (phase three); no. 1998-23 (phase four); and no. 1998-26 (phase five). The council apparently followed this procedure in an effort *Page 572 
to comply with § 11-42-22[4] and City of Prichard v. Cityof Saraland, 536 So.2d 1386 (Ala. 1988). In that case, the City of Saraland had annexed property that was within its police jurisdiction but also was within the police jurisdiction of the City of Prichard. Saraland adopted an initial ordinance annexing property up to an equidistant boundary between the two cities' corporate limits, as permitted by § 11-42-21. When its corporate limits had thus been rearranged, Saraland annexed additional property lying between its new corporate limits and the new equidistant boundary. This Court approved that procedure as fully compliant with §§ 11-42-21 and -22.
 (1) Phase One — Ordinance No. 1998-17
Spanish Fort argues that ordinance no. 1998-17, by which the Daphne City Council purported to annex the first phase of the mall property, was invalid because, it argues, that ordinance violated the equidistant-boundary limitation of § 11-42-21. We disagree.
The trial court held that Daphne's annexation of the mall property, in each phase, met the legal requirements of the equidistant-boundary rule. Spanish Fort concedes that ordinance no. 1998-17 purported to annex property that was contiguous with Daphne's then-existing corporate limits. However, Spanish Fort argues that the annexation was invalid because the northwest corner of that property touched the corporate limits of Spanish Fort. That argument, however, is without merit.
Before any of the annexations in dispute in this case were attempted, Daphne and Spanish Fort already shared a common boundary, running east-west. Beginning at the eastern terminating point of that common boundary, a line runs north-south separating unincorporated territory east of that line, including the mall property, from the territory of Spanish Fort, west of the north-south line and north of the two cities' common boundary, and the territory of Daphne, also west of the north-south line but south of the two cities' common boundary.
In ordinance no. 1998-17, the Daphne City Council purported to annex territory east of the north-south line and south of a line beginning at the terminating point of the existing common east-west boundary line between the two cities and extending eastward. In other words, while Daphne's purported annexation did include property that touched the Spanish Fort corporate limits at the annexed property's northwest corner, the two cities already touched at that point. Through ordinance no. 1998-17, Daphne extended its corporate limits in such a way that none of the annexed property was any closer to the then existing corporate limits of Spanish Fort than the point at the northwest corner of the annexed property where the two cities already adjoined. The trial judge held that this annexation did not violate the equidistant-boundary rule, and we agree.
Section 11-42-21 also provides that when a city adopts an ordinance of annexation, the city's corporate boundaries are not actually altered until "the date of the publication of said ordinance." Accordingly, the ordinance provided: "This Ordinance shall be published as required by Section 11-42-21, [Ala. Code 1975], and the property described herein shall be annexed to the corporate limits of the City of Daphne, Alabama, upon such publication." Thus, we conclude that ordinance no. 1998-17 was a valid annexation of the property described therein, and that it became effective on the date of publication of that ordinance, July 15, 1998.
 (2) Phases Two Through Five — Ordinance No. 1998-18, No. 1998-20, No. 1998-23, and No. 1998-26
Following its adoption of ordinance no. 1998-17, but before the publication of *Page 573 
that ordinance (and thus before it became effective), the Daphne City Council adopted ordinance no. 1998-18, at a council meeting held on July 13, 1998. This second ordinance purported to annex property lying between the new Daphne corporate limits (those established by ordinance no. 1998-17) and the new equidistant boundary between those new corporate limits and the corporate limits of Spanish Fort.
Spanish Fort argues that because ordinance no. 1998-17 had not yet become effective when the Daphne City Council adopted ordinance no. 1998-18, purporting to annex phase two of the mall property, the second ordinance was invalid as violating the equidistant-boundary limitation. In other words, Spanish Fort argues that because the first ordinance had not yet been published, the Daphne corporate limits had not yet been altered, and, therefore, the new equidistant boundary had not yet been established. For this reason, Spanish Fort argues that the Daphne City Council's adoption of the second ordinance (no. 1998-18) violated § 11-42-21.
The trial judge disagreed with Spanish Fort's argument, and we do as well. Ordinance no. 1998-17 became effective upon its publication on July 15, 1998. Although the Daphne City Council adopted ordinance no. 1998-18 on July 13, two days before ordinance no. 1998-17 became effective, ordinance no. 1998-18 was not published until July 18. As we have stated previously, an ordinance does not become effective until its publication. Thus, on the date that ordinance no. 1998-18 became effective, ordinance no. 1998-17 had already come into effect. Therefore, on the effective date of ordinance no. 1998-18, the Daphne corporate limits had already been modified by ordinance no. 1998-17, and the annexation adopted by ordinance no. 1998-18 did not violate the equidistant-boundary limitation. In essence, we conclude that the analysis whether preconditions necessary to an ordinance are in existence must be conducted with regard to the circumstances as they exist on the date the ordinance becomes effective, not on the date the ordinance is adopted by the city council. See Pappas v.Alabama Power Co., 119 So.2d 899, 908 (Ala. 1960).
Because ordinance no. 1998-18, annexing phase two, and the subsequent ordinances annexing phases three through five of the mall property did not become effective until after each previous ordinance had become effective, we conclude that the trial judge correctly held that these ordinances were all valid. Therefore, we affirm the judgment of the trial court as it relates to the mall property.
 C. The Causeway Property
The primary Code section governing our consideration of Daphne's attempts to annex the causeway property is, as with the mall property, § 11-42-21, Ala. Code 1975. The requirement of that Code section that affects our analysis of the purported annexation of the causeway property is the requirement of contiguity. Spanish Fort argues that the trial judge should have declared that annexation invalid because that property, Spanish Fort argues, was not contiguous with Daphne's then existing corporate limits. For the reasons discussed below, we agree with Spanish Fort.
The causeway property does not consist of a unified block of territory, as the mall property does. Instead, the causeway property consists of a number of separate "pockets" of property, each completely surrounded by areas that Daphne did not attempt to annex. Daphne purported to annex those "pockets" of property through a series of ordinances designed to annex that property in phases: 1998-19 (phase one), 1998-21 (phase two), 1998-24 (phase three), 1998-25 (phase four), and 1998-27 (phase five).
As a threshold matter, we note that this Court has held that under the contiguity requirement of § 11-42-21 there must be a "`touching' at some point." City of Dothan v. Dale County Comm'n,295 Ala. 131, 134, 324 So.2d 772, 775 (1975). Before *Page 574 City of Dothan, our cases had required a "substantial common boundary." Id.
There are some exceptions to the "actual-touching" rule ofCity of Dothan. A parcel of property is considered contiguous with a municipality's corporate limits, for the purposes of §11-42-21, if it lies directly across a public roadway from the municipal limits:
 "`[This Court] has said that two parcels of land are contiguous, within the meaning and intent of the legislature, if they lie on opposite sides of a public road. This finding does not, and should not, turn on an exhaustive analysis of who owns the underlying fee to, or who has reversionary rights to, the road right-of-way, or any similar principles of real estate law. Rather, the basis for this interpretation rests most comfortably upon a common sense recognition and understanding of what is necessary for the proper and efficient functioning of city government. In particular, to be considered are matters such as proximity and access (both close and convenient) to existing city services, such as police and fire protection, school bus routes, utility services, and similar functions of city government. It is reasonable to expect a city to provide these services to a parcel of land which merely lies across the street from the existing city limits, but it would be unreasonable in most instances to expect a city to provide these services to a parcel of land that lies fifteen or more miles down the road from the existing city limits. Surely, our legislature intended the former, but just as surely, [it] did not intend the latter.'"
Johnson v. Rice, 551 So.2d 940, 944-45 (Ala. 1989) (quoting an order of the circuit court). While this Court affirmed the judgment in Johnson v. Rice, it did not specifically adopt the trial court's order quoted in that case. We consider that portion of the circuit court's order in Johnson quoted here to be a correct statement.
This Court has also recognized that some annexations across public waterways may also meet the contiguity requirement of the statute, although we find only two Alabama cases discussing this issue: City of Madison v. City of Huntsville, 555 So.2d 755 (Ala. 1989), and Johnson v. Rice, supra. In those cases, both decided in 1989, this Court approved annexations by the City of Guntersville across Lake Guntersville and by the City of Decatur across Wheeler Lake. (City of Madison v. City of Huntsville
involved not only the two cities named in the style, but also Limestone County and the cities of Decatur and Athens.) InJohnson, the Court analogized the analysis to be applied when considering annexations across a body of water to the analysis to be applied when considering annexations across a public roadway. We reaffirm that analogy.
In addition, we note the analogous nature of our cases considering the "long-lasso method" of annexation, which this Court has explicitly rejected. Under that method, a city would purport to annex a public roadway of some length in an effort to create contiguity with an outlying parcel of property that would not otherwise be contiguous with the existing municipal limits.City of Fultondale v. City of Birmingham, 507 So.2d 489, 491
(Ala. 1987). In City of Fultondale, this Court explicitly overruled City of Tuskegee v. Lacey, 486 So.2d 393 (Ala. 1985). In City of Tuskegee, the City of Tuskegee had annexed 14 miles of a public roadway, without annexing any property lying along that roadway, in order to create contiguity with an outlying parcel of property. Although this Court upheld that annexation in City ofTuskegee, this Court overruled that decision in City ofFultondale. In City of Fultondale, this Court explained its reasons for rejecting the long-lasso method of annexation:
 "Although Alabama law does not require that municipal boundaries form a regular shape, the legal and popular idea of a municipality in this country is `that of oneness, community, locality, vicinity; *Page 575 
a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places.' 56 Am. Jur. 2d Municipal Corporations § 69 at 125 (1971); City of Dothan, supra."
507 So.2d at 491. The same considerations inform our analysis of the legality of annexations across public waterways.
In Johnson v. Rice, the City of Guntersville purported to annex territory directly across Lake Guntersville from the then existing city limits. This Court quoted at length the findings of fact, conclusions of law, and judgment of the trial court and "found no reason for reversing" the trial court's judgment. See 551 So.2d at 946. The trial court concluded that the annexation met the contiguity requirement because of the presence of a number of specific factors:
 "`In reaching this conclusion, we find essential facts to exist in this case with respect to the [property the City of Guntersville sought to annex] in relation to the existing city limits of Guntersville, and were it not for the presence of each and all these facts, our conclusion as to contiguity would be otherwise:
 "`a) But for the intervention of a public waterway (Guntersville Lake, owned and operated by the Tennessee Valley Authority, a public government entity) and the appurtenant lake-shore property rights owned by TVA (such as flooding rights), the [property sought to be annexed] would actually touch the existing city limits of Guntersville.
 "`b) The [property sought to be annexed] lies directly across the public waterway from the existing city limits of Guntersville, and not diagonally across the waterway.
 "`c) There is a public road (including a bridge and approaches thereto) which crosses the public waterway and connects the existing city limits of Guntersville to the [property sought to be annexed], with no intervening landowners which abut said public road other than TVA. In other words, the bridge and approaches begin inside the City of Guntersville and cross the public waterway (Guntersville Lake), and the first private property owner on the other side of the lake which abuts the public road [owned the property sought to be annexed].
 "`d) Ordinance 592 annexes both the [property sought to be annexed] and the public road right-of-way which connects it to the city, so after the annexation it is not necessary to go outside of the city to reach the [property sought to be annexed].'"
551 So.2d at 945 (second emphasis added). In City of Madison v.City of Huntsville, this Court also approved Decatur's annexation of property lying directly across Wheeler Lake from Decatur's then existing corporate limits. Just as in Johnson, the annexation also included the public roadway running across the lake joining the newly annexed property to the then existing city limits.
Applying the principles established in the cited cases to the facts of this case, we conclude that Daphne's purported annexation of the causeway properties did not meet the § 11-42-21 requirement of contiguity, as that requirement has been explained by this Court. In its purported annexation of the causeway properties, Daphne did not attempt to annex the public roadways that might have allowed access from the then existing Daphne corporate limits to the properties to be annexed. The properties comprise several "pockets" of territory that are surrounded on all sides by property Daphne did not attempt to annex. To reach by automobile any of the causeway properties Daphne purported to annex, one would have to travel outside Daphne and through areas that Daphne did not attempt to annex. *Page 576 
The trial court found that all the causeway properties were contiguous to the city's existing city limits because they touch "by land or by water." However, as explained above, there is no existing route by which the properties may be reached by automobile from the original Daphne boundaries without traveling outside the city; thus, this case is different from Johnson andCity of Madison, where the annexing cities annexed public roadways leading directly from the existing boundaries of those cities to the property sought to be annexed. Applying the principles of Johnson, City of Madison, and the other cases cited above, we conclude that Daphne's purported annexations of the causeway properties are similar to the long-lasso annexations explicitly disapproved of by this Court in City of Fultondale and that they are distinguishable from the annexations approved of by this Court in Johnson and City of Madison. Accordingly, we conclude that those annexations were invalid as violating the contiguity requirement of § 11-42-21, and we reverse that portion of the judgment of the trial court declaring those annexations to be valid.
 III. Conclusion
The judgment of the trial court is affirmed insofar as it holds valid Daphne's annexation of the mall property; insofar as it declares Act No. 98-634 unconstitutional; and insofar as it holds invalid the purported annexation by Spanish Fort. That judgment is reversed insofar as it relates to the causeway properties, with the exception of that portion of the causeway properties the annexation of which the trial court declared invalid as violating the equidistant-boundary limitation of §11-42-21;[5] that portion is not involved in this appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Hooper, C.J., and Houston, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] Merritt Oil Company, Inc., was also named as a plaintiff in the action filed by Daphne. Merritt Oil owned part of the causeway property purportedly annexed by Daphne. D.V. Williams, who owned and resided on one of the tracts of the causeway property, was later added as a plaintiff.
[2] Section 104 prohibits the Legislature from adopting local acts concerning certain subject matters. However, subsection 18 of that section explicitly permits the Legislature to adopt local acts that "alter or rearrang[e] the boundaries of [a] city, town, or village." See Town of Vance v. City of Tuscaloosa, 661 So.2d at 742.
[3] Because we conclude that the enactment of Act No. 98-634 violated the Alabama Constitution, we need not reach Daphne's argument that its enactment also violated the Fourteenth Amendment to the United States Constitution.
[4] Ala. Code 1975, § 11-42-22, provides:
 "Any incorporated municipality having extended its corporate limits under the provisions of this article or any other law may again extend its corporate limits under this article or under any other law authorizing an extension of the corporate limits by such incorporated municipality."
[5] This was a small portion of the property Daphne sought to annex by ordinance no. 1998-19.