The City of Daphne, Merritt Oil Company, Incorporated ("Merritt"), and D.V. Williams (Daphne, Merritt, and Williams are hereinafter referred to collectively as "the Daphne plaintiffs") appeal from a *Page 936 
summary judgment in favor of the City of Spanish Fort. The Daphne plaintiffs argue that Spanish Fort conspired with certain members of the Legislature to enact an act annexing to Spanish Fort parcels of land ("the disputed parcels") while a first annexation dispute between the Daphne plaintiffs and Spanish Fort was pending in the Baldwin Circuit Court. Because we hold that a legislative act may prospectively annex property that is the subject of a pending action, we affirm.
 I. Factual Procedural History
Daphne and Spanish Fort have been in disagreement over the purported annexations of the disputed parcels in Baldwin County since 1998. Specifically, the disputed parcels consist of property located north and east of the intersection of Interstate 10 and U.S. Highway 98 in western Baldwin County ("the mall property") and several separate parcels of property lying, generally, along U.S. Highway 90 between the western boundary of Spanish Fort as it existed before any of the annexations at issue here and the Mobile-Baldwin County line ("the causeway property").
Daphne filed its first action against Spanish Fort ("Dispute I") after the voters of Spanish Fort approved the annexation of certain property pursuant to a local act of the Legislature authorizing such a referendum. Daphne had previously annexed parcels of the same property pursuant to the landowner-consent method of §§ 11-42-20 to -24, Ala. Code 1975. Merritt[1] and Williams[2] were also plaintiffs in Dispute I.
Dispute I reached this Court, and we adopt the following statement of facts provided in City of Spanish Fort v. City of Daphne, 774 So.2d 567
(Ala. 2000), as background to the present action:
 "Daphne and Spanish Fort are adjacent municipalities situated on the eastern shore of Mobile Bay in Baldwin County. The genesis of the dispute between the two cities appears to have come in 1998. In March of that year, Spanish Fort caused to be published in a Baldwin County newspaper notice of that city's intent to seek a local act of the Legislature authorizing a referendum in which the voters of certain areas of Baldwin County would decide whether those areas would be annexed into Spanish Fort. That notice was published on March 7, 14, 21, and 25, 1998, and it included a detailed legal description of the property that Spanish Fort would seek to have the Legislature include in the area to be annexed into Spanish Fort upon the passage of a referendum of qualified electors living in the affected area.
 "While considering the bill proposed by Spanish Fort, the Legislature amended it to remove approximately half of the property Spanish Fort had initially sought to have included in the area to be annexed. The property removed from the provisions of the bill by the amendment generally lay to the east and the north of the existing Spanish Fort city limits. The Legislature approved the bill as amended, and it became effective with the signature of Governor Fob James on May 6, 1998. Act. No. 98-634, Ala. Acts 1998 (Reg. Sess.). The act provided that the corporate limits of the City of Spanish Fort would be altered to include the property described in the *Page 937 
act, provided that `the qualified electors who reside within the territory to be annexed [approved the annexation] in a referendum to be held' on a day selected by the Baldwin County probate judge. Id.
(see § 4). The probate judge scheduled the referendum for July 28, 1998.
 "In a series of meetings between July 6, 1998, and July 22, 1998, the Daphne City Council purported to annex into Daphne several parcels of property that had been included in the area subject to the referendum approved by the Legislature in Act No. 98-634. Those parcels of property may be described as falling into two general groups, the `mall property' and the `causeway property.' . . . On July 28, the Spanish Fort annexation referendum was conducted, and the voters approved the annexation by a vote of 129-72.
 "On August 5, 1998, Daphne filed an action in the Baldwin Circuit Court, seeking a judgment declaring Daphne's purported annexation of the disputed property to be valid and declaring Spanish Fort's purported annexation of the same property by the July 28 referendum to be invalid. Spanish Fort answered and filed a counterclaim, seeking a judgment declaring that Daphne's purported annexation of the disputed property was invalid and declaring that the property had in fact been annexed into Spanish Fort by the July 28 referendum."
774 So.2d at 569 (footnote omitted).
The trial court concluded that the mall property and the causeway property were validly annexed into Daphne, and that the Spanish Fort annexation was invalid because the property advertised for the proposed annexation by referendum was approximately twice the size of the area ultimately subject to the annexation after the amendment of Act No. 98-634, Ala. Acts 1998 ("the 1998 Act"). The property annexed by Spanish Fort differed materially from the property described in the advertisement, and the trial court held that such a discrepancy violated Ala. Const. of 1901, Art. IV, § 106, which provides that no local law can be passed without notice of the proposed law in the county where the subject matter affected by the law is located.
Spanish Fort appealed the trial court's judgment in Dispute I. We affirmed that aspect of the trial court's judgment holding that the 1998 Act violated Article IV, § 106, of the Alabama Constitution. We also affirmed the trial court's judgment insofar as it related to the mall property; however, we reversed the trial court's judgment as to the causeway property because Daphne's purported annexation of the causeway property did not meet the requirement of contiguity contained in §11-42-21, Ala. Code 1975.
Before the trial court entered its judgment in Dispute I, the mayor of Spanish Fort, several members of the Legislature, and the attorney for Spanish Fort discussed introducing a new bill to annex the disputed parcels to Spanish Fort.[3] The bill was drafted by Spanish Fort's attorney with input from the mayor and members of the city council of Spanish Fort. The mayor testified as to the purpose of the new bill:
 "Q. What did you intend to accomplish by passing the new [bill]?
 "A. To annex the territory that the majority of the people wanted to be in the city [per the referendum vote]. . . .
". . . .
 "Q. So if you had an adverse ruling [in Dispute I], say if you hadn't annexed *Page 938 
it properly in the [1998 Act], the [new bill] would overturn the judge's decision; right?
 "A. I don't know whether it would overturn the judge's decision or not because the judge interprets laws and the legislature passes laws. And this would be a law. And they have the authority to annex any territory without a referendum. And that wouldn't be overturning a judge's order."
On April 14, 1999, the Spanish Fort City Council held a special meeting, and approved the new bill. The new bill was introduced to the Legislature on May 20, 1999, only one day before the trial court entered its judgment in Dispute I in favor of Daphne as to all the disputed parcels. The Legislature passed the new bill, Act No. 99-547, Ala. Acts 1999 ("the 1999 Act"), and it became effective on June 18, 1999. The preamble of the 1999 Act states its purpose as follows:
 "To alter or rearrange the boundary lines and corporate limits of the City of Spanish Fort in Baldwin County, Alabama, so as to include within the corporate limits of said City all territory now within the corporate limits of said City and also certain other territory. WHEREAS, the Legislature of the State of Alabama enacted [the 1998 Act] which called for a referendum to be held to determine whether certain territory described in [the 1998 Act] would be annexed into the corporate limits of the City of Spanish Fort, Alabama; and WHEREAS, an annexation election was held on July 28, 1998, and 129 votes were cast in favor of annexation of the said territory into the corporate limits of the City of Spanish Fort and 72 votes were cast against annexation, with the clear majority voting in favor of annexation; and WHEREAS, there has arisen a dispute regarding the annexation of said territory based on some alleged defects in the enactment of [the 1998 Act] resulting in some uncertainty regarding the boundary lines and corporate limits of the City of Spanish Fort; and WHEREAS, based on the intent of this Legislature in passing [the 1998 Act] and the majority vote of the people in favor of annexation, the Legislature now wishes to resolve the aforementioned dispute in the most expedient manner possible."
The Daphne plaintiffs filed their complaint in the present action on June 29, 1999, seeking a judgment declaring that the 1999 Act was unconstitutional and enjoining Spanish Fort from exercising jurisdiction over the mall property and the causeway property. The Daphne plaintiffs claimed that Spanish Fort's "expressed purpose was to give the Legislature, not the [trial court], the power to resolve the dispute — an illegal usurpation of judicial authority." The Daphne plaintiffs alleged that Spanish Fort was attempting to collect taxes from the property owners of the disputed parcels. Finally, the Daphne plaintiffs alleged that the 1999 Act violated § 11-42-6, Ala. Code 1975, which requires that the act contain an accurate description of the property to be annexed, and that the 1999 Act was passed as the result of a conspiracy between the mayor of Spanish Fort and certain members of the Legislature.
The Daphne plaintiffs also filed a motion for a temporary restraining order and a preliminary injunction. The trial court denied the motion, but it ordered Spanish Fort to pay the tax revenues it had collected from the owners of the disputed parcels since the effective date of the 1999 Act to the clerk of the Baldwin Circuit Court. The Daphne plaintiffs filed several amended complaints adding claims of money had and received, intentional interference with *Page 939 
business relations, misrepresentation, detinue, trover, and conversion.
Spanish Fort filed a motion for a summary judgment, claiming that the 1999 Act was constitutional and that the 1999 Act did not usurp the authority of the judiciary because a court does not have the power to annex property. Spanish Fort claimed that the Legislature intended only to correct or resolve the defects of the 1998 Act by enacting a "new, separate, prospective act." Spanish Fort claimed that the theories of money had and received, detinue, trover, and conversion were due to be dismissed because Spanish Fort had collected no taxes from the owners of the mall property. Spanish Fort also claimed that this Court's ruling in Dispute I — that Daphne's annexation of the causeway property was invalid — extinguished Daphne's claims because it was owed no taxes. Finally, Spanish Fort argued that Williams had no claim because he had not paid any taxes to Spanish Fort and that even though Merritt had paid taxes to Spanish Fort since the enactment of the 1999 Act, its claims should also be dismissed if the trial court concludes that the 1999 Act was not unconstitutional.
The Daphne plaintiffs opposed Spanish Fort's summary-judgment motion; that response included, among other exhibits, deposition testimony of the mayor of Spanish Fort, members of the Legislature, and city council members. The Daphne plaintiffs argued that this testimony constituted evidence of a conspiracy to draft, introduce, and enact the 1999 Act, which, they said, violated the constitutional rights of the citizens living on the mall property and the causeway property. The Daphne plaintiffs also claimed that the testimony constituted substantial evidence showing that Spanish Fort intended to usurp the trial court's authority by providing legislatively the same relief that was being sought in the trial court. The Daphne plaintiffs argued that a summary judgment was improper on their remaining claims because, they said, they had presented substantial evidence creating genuine issues of material fact.
The trial court dismissed the claim for monetary relief under the theories of conspiracy and intentional interference with business relations. The parties dismissed the alleged violation of § 11-42-6
by joint resolution. The trial court dismissed the claims of money had and received, detinue, trover, and conversion as to Daphne and Williams only. The claims against Merritt under these theories were not dismissed. The trial court entered a summary judgment in favor of Spanish Fort. The trial court held that no dispute existed as to any material fact and concluded:
 "4. The court is of the opinion that it is the well-settled law of Alabama that the legislature enjoys plenary power over municipalities and their boundaries unless it is restricted by the Alabama Constitution. In the Opinion of the Justices [No. 181,] 277 Ala. 630, [633,] 173 So.2d 793, 796 (1965), the court wrote, `We have held that the State, through its Legislature, at its pleasure, may modify or withdraw all the governmental powers of a municipality, may [expand] or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States (. . .).' In City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61 *Page 940 
(1909), the Alabama Supreme Court approved the legislature's destruction of the City of Ensley and its incorporation into the City of Birmingham. In that opinion, the court noted that the fact that [although] Ensley's inhabitants or property owners may be inconvenienced and their property values lessened by the burden of increased taxation, the citizens have no right, either by contract or otherwise, in the continued existence of a municipal corporation or in the exercise of its powers.
". . . .
 "6. The plaintiffs admit that the legislature's authority is not in dispute but that the exercise of the authority took away a matter from the courts. The court is of the opinion that the action of the legislature (by passage of [the 1999 Act]) did not remove any matter that the court could decide. No circuit court in Alabama has the authority to establish a municipality's boundaries. Circuit courts have jurisdiction only to determine whether a particular statute conforms to the provisions of the Alabama Constitution and whether the requirements of a particular act are lawfully followed.
 "7. The court determines that as a matter of law, there was no violation of the separation of powers between the legislature and the judicial branches of government. For the foregoing reasons, the court is of the opinion that the second motion for summary judgment filed by the City of Spanish Fort is due to be granted. Therefore, the summary judgment be, and the same is hereby granted in its favor."
 II. Standard of Review
A motion for a summary judgment is granted when the moving party demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Ex parte Delta Air Lines, Inc., 785 So.2d 327, 329
(Ala. 2000). "In order to defeat a properly supported motion for summary judgment, the plaintiff must present `substantial evidence,' i.e., `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Town of Vance v. City of Tuscaloosa,661 So.2d 739, 742 (Ala. 1995) (quoting West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review of a summary judgment is de novo, and we apply "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860,862 (Ala. 1988). We review a summary judgment in a light most favorable to the nonmoving party. Id.
 III. The Validity of the 1999 Act
The essence of the Daphne plaintiffs' claims, as stated in their brief to this Court, is that "Spanish Fort abused its power, [and] attempted to manipulate the different branches of government in order to get its own way, regardless of the rights of the residents of Alabama." The Daphne plaintiffs argue that through the enactment of the 1999 Act, "Spanish Fort and the Alabama Legislature set out to design legislation to specifically decide [Dispute I] while it was pending, and thereby violate[d] the constitutional rights of the people they were charged to protect." The Daphne plaintiffs argue that the 1999 Act violates the Alabama Constitution of 1901, Art. III, § 43, and Art. IV, §§ 95 and 105.
 A. Article III, § 43
The Daphne plaintiffs argue that the 1999 Act violated the separation-of-powers *Page 941 
doctrine of § 43, Ala. Const. 1901, because, they argue, Spanish Fort and the Legislature intended to usurp the authority of the judiciary by "resolving" Dispute I by passage of the 1999 Act. The separation-of-powers doctrine provides:
 "In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
Ala. Const. of 1901, Art. III, § 43. The Daphne plaintiffs argue that the power to render a judgment that resolves a case belongs only to the judicial branch of government. See Ex parte Jenkins, 723 So.2d 649, 656
(Ala. 1998) (holding that the retroactive application of a statute to change the reopening provisions of paternity judgments finalized before the statute was enacted violated the separation-of-powers doctrine).
The Daphne plaintiffs cite the preamble to the 1999 Act as the "most dramatic evidence" of its constitutional infirmity. The pertinent parts of the preamble are as follows:
 "WHEREAS, there has arisen a dispute regarding the annexation of said territory based on some alleged defects in the enactment of [the 1998 Act] resulting in some uncertainty regarding the boundary lines and corporate limits of the City of Spanish Fort; and WHEREAS, based on the intent of this Legislature in passing [the 1998 Act] and the majority vote of the people in favor of annexation, the Legislature now wishes to resolve the aforementioned dispute in the most expedient manner possible."
(Emphasis added.) The Daphne plaintiffs argue that the proponents of the 1999 Act agree that the "dispute" referenced in the 1999 Act was the ongoing litigation of Dispute I.
Spanish Fort argues that the controversy at issue in Dispute I was the validity of the 1998 Act and that the final judgment held that the 1998 Act was unconstitutional. In its brief to this Court, Spanish Fort contends that the 1999 Act is an "independent act that accomplished a valid, prospective annexation effective June 18, 1999." Spanish Fort argues that the 1999 Act did not reverse the trial court's judgment in Dispute I, did not direct any court on how to rule in Dispute I, did not make the annexation into Spanish Fort retroactive to the effective date of the 1998 Act, and did not retroactively change any law under which Dispute I was decided. Therefore, Spanish Fort concludes, the 1999 Act did not violate the separation-of-powers doctrine. We agree.
The Alabama Constitution of 1901 "vested legislative authority in a State Legislature, whose powers are plenary and unlimited except by special limitations imposed by the [Constitution]." Sisk v. Cargile,138 Ala. 164, 172, 35 So. 114, 117 (1903), cited in Broadway v. State,257 Ala. 414, 417, 60 So.2d 701, 703 (1952), and Ex Parte Foshee,246 Ala. 604, 606, 21 So.2d 827, 829 (1945). Article IV, § 104, expressly provides that the Legislature has the power to alter or rearrange by local law the boundaries of a municipality. As cited by the trial court, this Court described the plenary power of the Legislature over a municipality as follows:
 "It is generally held that the Legislature, in the absence of specific constitutional limitations, has the power to detach, or authorize the detachment of, *Page 942 
territory from municipalities. 62 C.J.S. Municipal Corporations § 48, p. 139; 37 Am. Jur., Municipal Corporations, § 35, p. 652; Annotation 117 A.L.R. 268. This principle is recognized and stated in Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 122 So.2d 757 [(1960)]. See Punke v. Village of Elliott, 364 Ill. 604, 5 N.E.2d 389 [(1936)].
 "We have held that the State, through its Legislature, at its pleasure, may modify or withdraw all the governmental powers of a municipality, may expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States."
Opinion of the Justices No. 181, 277 Ala. 630, 633, 173 So.2d 793, 796
(1965).
The power of the judiciary, on the other hand, is "the power to declare finally the rights of the parties, in a particular case or controversy, based on the law at the time the judgment becomes final." Jenkins, supra, 723 So.2d at 656. "`[T]o declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative.'"Sanders v. Cabaniss, 43 Ala. 173, 180 (1869) (quoting Thomas M. Cooly,Constitutional Limitations 91-95 (1868)). Under the separation-of-powers doctrine, the Legislature cannot enact a law that would change the law incorporated into a final judgment of a court. Jenkins, 723 So.2d at 655 (citing Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19 (1995)).
Dispute I focused upon the validity of the 1998 Act, which altered the corporate limits of Spanish Fort to include the disputed parcels, provided that a majority of qualified voters approved the annexation by a referendum. The validity of the 1999 Act was not addressed in Dispute I, and if it was enacted so as to have prospective operation, it could not usurp the power of the court to resolve the then pending litigation in Dispute I. See Jenkins, 723 So.2d at 659.
As recognized in Jenkins, this Court has long operated under the following rule of statutory construction:
 "`"It may be laid down as a fundamental rule for the construction of statutes that they will be considered to have prospective operation only, unless a legislative intent to the contrary is expressed or is necessarily to be implied from the language used or the particular circumstances; especially where to construe the act as retrospective in its operation would render it obnoxious to some constitutional provision, though the fact that the retrospective operation would not be unconstitutional, does not require the act to be construed as retrospective [sic]."'"
723 So.2d at 658-59 (quoting Greenwood v. Trigg, Dobbs Co.,143 Ala. 617, 619, 39 So. 361, 361 (1905), quoting in turn 26 Am. 
Eng. Ency. Law, 693).
In Jenkins, this Court addressed the validity of a statute that permitted the reopening of a finalized paternity judgment based upon scientific evidence that the adjudged father was not the biological father. 723 So.2d at 652. The statute at issue in Jenkins did not expressly require retroactive application, but, instead, provided: "`This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise *Page 943 
becoming a law.' Ala. Acts 1994, Act No. 94-633, § 4." Id. at 659. We held that the statute, applied prospectively, did not violate the separation-of-powers doctrine because that statutory construction would prevent any constitutional infirmity. Id. The 1999 Act includes the same prospective language. Furthermore, the 1999 Act refers to the 1998 Act and provides:
 "Section 5. All laws or parts of laws which conflict with this Act are hereby repealed to the extent of such conflict. However, any and all rights or authority granted to the City of Spanish Fort pursuant to [the 1998 Act] shall remain in effect and shall be deemed cumulative to the authority and rights vested in the City of Spanish Fort hereunder."
The language expressly provides that the enactment of the 1999 Act is not dependent upon the validity of the 1998 Act. The rights vested in the 1999 Act were cumulative to the rights, if any, vested by the 1998 Act. Accordingly, the 1999 Act operated prospectively to annex the disputed parcels into Spanish Fort, and such prospective effect did not usurp the power of the court in Dispute I.
Moreover, the Legislature has the plenary power to correct constitutional defects in statutes. In interpreting a criminal statute inEx parte Jackson, 614 So.2d 405, 408 (Ala. 1993), this Court acknowledged that if the Legislature disagreed with the Court's interpretation of the statute, then the Legislature could "enact appropriate legislation to modify the statute and yield a different result in subsequent cases." In the present action, the Legislature adopted the 1999 Act to properly annex the disputed parcels and to correct its mistakes in the 1998 Act. By enacting the 1999 Act, the Legislature did not take away a power of the judiciary. The 1999 Act annexed the disputed parcels — the same parcels Spanish Fort purported to annex under the 1998 Act — but in doing so, it did not interfere with the status of the disputed parcels between July 1998 and June 1999, the year in which the 1998 Act was in effect.
The 1999 Act contains no indication that it was enacted to resolve retrospectively the pending litigation of Dispute I. In our review of the 1999 Act, we are bound to construe the act with every presumption in favor of its validity. City of Birmingham v. City of Vestavia Hills,654 So.2d 532, 535 (Ala. 1995). Our duty is to sustain a legislative act unless it is clear beyond a reasonable doubt that the act violates a fundamental law. Id. The Daphne plaintiffs argue that the word "dispute" in the introduction of the 1999 Act refers to the ongoing litigation of Dispute I and is therefore evidence indicating that the 1999 Act intended to resolve Dispute I. However, we find that the language refers to the infirmity of the 1998 Act, which was prospectively corrected by the enactment of the 1999 Act.
The Daphne plaintiffs also argue that the Legislature was required to wait until Dispute I was finally adjudicated before it could enact legislation affecting the disputed parcels. The Daphne plaintiffs cite no authority for this proposition,[4] however, and we know of no authority that would require the Legislature to wait until a final adjudication before it can enact an act that is prospective in effect. The 1999 Act is an independent, prospective act that altered the corporate limits and boundaries of Spanish Fort — a right expressly *Page 944 
reserved to the Legislature. Ala. Const. of 1901, Art. IV, § 104(18).
 B. Article IV, § 95
The Daphne plaintiffs argue that the 1999 Act violates § 95, Ala. Const. 1901, because, they say, the Legislature changed a rule of decision "midstream" in order to affect the outcome of Dispute I. Section 95 provides that "[a]fter suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit." See United Cos.Lending Corp. v. Autrey, 723 So.2d 617 (Ala. 1998) (the Legislature cannot change the law to lessen a plaintiff's recovery once the plaintiff files an action); see also Kemp v. Britt, 410 So.2d 31 (Ala. 1982) (the Legislature may not change the law to lessen a state employee's benefits after the employee has sued to collect those benefits).
The 1999 Act did not take away the Daphne plaintiffs' cause of action, nor did it destroy a defense available to the Daphne plaintiffs in Dispute I. In fact, the 1999 Act did not retroactively affect, in violation of § 95, any of the rights available to the Daphne plaintiffs under the then existing law. See Kemp, 410 So.2d at 34. The 1999 Act created an independent, prospective annexation. For all that appears, the Daphne plaintiffs could have introduced a similar annexation bill to the Legislature to annex the disputed parcels into Daphne; however, the action was taken by Spanish Fort. The 1999 Act does not violate § 95 because it did not take away any rights available to the Daphne plaintiffs under Dispute I.
 C. Article IV, § 105
The Daphne plaintiffs argue that the 1999 Act granted the very same relief that was pending before the court in Dispute I, in violation of Art. IV, § 105, Ala. Const. of 1901. Section 105 prohibits the enactment of a local law when such a law is provided for by a general law or "when the relief sought can be given by any court of this state." The Daphne plaintiffs contend that the deposition testimony of the mayor of Spanish Fort, certain members of the Legislature, and the members of the city council of Spanish Fort constitutes evidence indicating that Spanish Fort annexed the same property in the 1999 Act that Spanish Fort had asked the Alabama courts to declare part of its municipality in Dispute I. For example, a city council member testified:
 "Q. So, if you pass this Act, the '99 Act, you'd get the same relief you would have gotten if the [trial court] ruled in your favor, is that right?
"A. Yes."
Another council member testified that she understood the legal description of the property in the annexation attempted in the 1998 Act to be the same as that in the 1999 Act.
In this state, property can be annexed to a municipality by three methods. First, the Legislature can annex property by passing a local law. Ala. Const. of 1901, Art. IV, § 104(18). Second, property can be annexed by a referendum. § 11-42-2, Ala. Code 1975. Finally, property can be annexed under the landowner-consent method pursuant to §§11-42-20 to -24, Ala. Code 1975. The general laws of the State place restrictions on the annexation of property under the landowner-consent method. See, e.g., § 11-42-21, Ala. Code 1975. However, the Legislature's power to annex property by local law is restricted only by the Alabama Constitution. City of Birmingham, supra, 654 So.2d at 535.
The Constitution restricts the Legislature from enacting a local law to incorporate a municipality or to amend, confirm, or extend the charter of a municipal corporation. *Page 945 
Ala. Const. of 1901, Art. IV, § 104. However, Art. IV, § 104, expressly provides that the Legislature may alter or rearrange the boundaries of a municipality by local law. See Town of Vance, supra, 661 So.2d at 743-44 (upholding a local law that altered the boundary lines of the City of Tuscaloosa); City of Birmingham v. Norton, 255 Ala. 262,50 So.2d 754 (1950) (the Legislature can enact a law that rearranges or alters municipal boundaries even when the law disincorporates another municipality); City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61 (1909) (upholding a local law that altered and rearranged the boundary lines of the City of Birmingham).
The courts were limited in Dispute I to addressing only the question of the validity of the 1998 Act and the validity of Daphne's purported annexations under the landowner-consent method. The annexation method of the 1998 Act was held to be invalid. City of Spanish Fort, supra, 774 So.2d at 571. However, Spanish Fort could not ask the courts to annex the territory into Spanish Fort. A court's power extends only to the cases and controversies brought before it, and the court in Dispute I could declare only whether the method used to annex territory was valid.
The Daphne plaintiffs acknowledge that a court does not have the power to annex territory; however, they argue that under the "unique circumstances" of the present action, the court could grant the same relief as that provided in the 1999 Act. However, a finding of validity or invalidity does not equate to the power to annex; that action is a prerogative of the Legislature, not the courts of this state. Because the court never had the power to annex territory to Spanish Fort, the 1999 Act does not violate § 105 because the court could not have granted the relief sought by Spanish Fort under the 1999 Act. See Sisk, supra,138 Ala. at 171, 35 So. at 117.
In Sisk, the legislative act in question provided for a special levy of taxes to pay for bonds authorized by an original act for the construction of public roads. 138 Ala. at 170, 35 So. at 116. This Court upheld the validity of the act and recognized that it did not violate § 105 because the levy of a tax is a legislative power and such relief cannot be had in the courts. 138 Ala. at 171, 35 So. at 117. By analogy toSisk, the court in the present action did not have the power to annex territory to a municipality because that power is reserved to the Legislature under § 104(18). In Sisk, the gravamen of the act was to levy a special tax, whereas here the gravamen of the 1999 Act was to annex territory; both are legislative powers. 138 Ala. at 172,35 So. at 117. The court in Sisk had the power to declare the act unconstitutional, just as the court in Dispute I had the power to declare the 1998 Act unconstitutional. However, neither court had the power to grant the relief requested by the respective actions.
The Daphne plaintiffs argue that determining the meaning of "when the relief sought can be given by any court" in § 105 is a matter of first impression. The Daphne plaintiffs attempt to distinguish the meaning of the phrase from the meaning applied in Sisk because ongoing litigation regarding the same tax was not an issue before the Court inSisk. However, the ongoing litigation in Dispute I involved only the 1998 Act. The judicial system lacked the authority in Dispute I to insulate the Daphne plaintiffs from the prospective exercise of the legislative prerogative of annexation. Consequently, the distinction from Sisk urged by the Daphne plaintiffs is not persuasive.
The Daphne plaintiffs urge us to consider the testimony of members of the Legislature; however, this Court will not inquire into the motive or intent of members of the Legislature: *Page 946 
 "`The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act. So in ascertaining the meaning of a statute the court will not be governed or influenced by the views or opinions of any or all of the members of the Legislature, or its legislative committees or any other person.'"
James v. Todd, 267 Ala. 495, 506, 103 So.2d 19, 28-29 (1957) (quotingWiseman v. Madison Cadillac Co., 191 Ark. 1021, 1024-25, 88 S.W.2d 1007,1009 (1935)). In sum, the testimony presented by the Daphne plaintiffs fails to establish a genuine issue as to a material fact regarding a violation of § 105. Such testimony is immaterial in view of our holding recognizing the authority of the Legislature to annex prospectively territory that was the subject of proceedings involving the 1998 Act in Dispute I.
 IV. Conclusion
We conclude that the 1999 Act is valid in its entirety and that it effectively annexes the disputed parcels of the mall property and the causeway property into Spanish Fort; therefore, we affirm the judgment in favor of Spanish Fort. We pretermit discussion of the Daphne plaintiffs' remaining arguments.
AFFIRMED.
Moore, C.J., and Houston, Lyons, Johnstone, and Woodall, JJ., concur.
[1] Merritt is an Alabama corporation with its principal place of business in Mobile County. Merritt owns and operates two gasoline service stations located on the causeway property.
[2] Williams is a resident of Baldwin County who owns and resides on a tract of land located within the causeway property.
[3] The new bill also included the annexation of territory not subject to the present action.
[4] "[I]t is neither this Court's duty nor its function to perform an appellant's legal research." City of Birmingham v. Business Realty Inv.Co., 722 So.2d 747, 752 (Ala. 1998); Green Tree Fin. Corp. v. Vintson,753 So.2d 497, 503 n. 5 (Ala. 1999).